* The cause was argued by Bliss and Mills for the plaintiff in error, and by Mr. Solicitor-General [Davis] for the commonwealth; and after the argument, being continued nisi for advisement, at the following March term in Suffolk, the opinion of the Court was delivered, as follows, by
Sedgwick, J.
There are two counts in the indictment, charging the same offence ; and if either of them be good, the conviction and judgment are right; and as all the objections are equally applicable to each, I shall confine my observations to the last, because it is the most simple.
This count charges the prisoner with possessing, with the unlawful intention which constitutes the offence, twenty false, forged, and counterfeit bank bills or promissory notes, purporting to be twenty bank bills or promissory notes payable to the bearers thereof, and to be signed in behalf of the president, directors, and company of the Worcester Bank, for the sum of five dollars each; averring, in the words of the statute, that they were a corporation by law licensed and authorized, as a bank within the commonwealth; and alleging that the bills were retained and kept in the prisoner’s possession, so that the jurors could not set forth their tenor ; and that he, having knowledge that the bills or notes were, and that each of them was, forged, did then and there aid and assist in rendering them and eac’h of them current as true; and that the prisoner did then and there, at one and the same time, have and possess them, and each of them, knowing them to be false, forged, and counterfeit, with intent to utter and pass them, and thereby to defraud the president, directors, and company of the Worcester Bank.
The first objection to the indictment is the allegation, that the twenty bank bills or promissory notes purported to be twenty bank bills or promissory notes. It is said there is nothing in the bills like a purport of twenty bills ; but that, on the contrary, the purport must be understood from the inspection of each bill separately, and that so the * purport is of each bill severally, as one bill of five dollars.
I admit that the purport of an instrument is that which appears upon the face of it, as laid down in the case of The King vs. Reading ; (1) but then I am satisfied, that to the understanding of every *58 one, whether learned or unlearned, a declaration, that twenty pieces of paper purporting to be twenty bank notes, would be considered as tantamount to affirming, that those twenty pieces of paper purported each one to be a bank note. — And a similar answer may be given to the second objection, which is, that the bills purported to be. payable to the hearers thereof. This cannot but be understood as declaring that each of the twenty notes was payable to the bearer of it.
Another objection is, that the papers alleged to have been in the prisoner’s possession are denominated bank bills or promissory notes, and that it is not said whether they were bank bills or promissory notes.
The subject of this crime, as described in the statute, (2) is, “ any bank bill or promissory note, payable to the bearer, signed in be half of any company or corporation, by law licensed and authorized as a bank within this commonwealth.” — Now, the paper which was in the possession of the prisoner was payable to bearer, and signed in behalf of the bank ; and a note issued, as these purported to have been, by a banking company, and payable to bearer, is a promissory note; and it is also a bank bill; and therefore the indictment brings the case, in this respect, expressly within the words of the statute.
Another objection is, that the indictment does not, with sufficient certainty, describe the titles or names of the banks and bank bills mentioned in the indictment.
This objection, whether well or ill founded, was not intended, as I understood, to apply to the last count of the indictment; and therefore it does not require a particular examination.
The two other objections, which are specifically stated, -are, — 1. That the prisoner’s “ having knowledge of the false * making of the bills,” is not alleged in the words of the statute; and, 2. That the bills, which are alleged to have been in the possession of the prisoner, are not averred to be “ similar.”
I was deeply impressed by the force and ingenuity with which these objections were pressed by the prisoner’s counsel; and have been since induced to give them a very serious and deliberate consideration.
I am perfectly satisfied of the justness of Lord Hale’s observations as to the effects of the great “ strictness,” which are required in indictments for capital offences; (and the offence with which this prisoner is charged is almost of that nature ;) that from thence many times gross murders, burglaries, and other heinous and crying *59 offences, escape by those unseemly niceties, to the reproach of the law, to the shame of the government, and to the dishonor of God. (3) Yet, to all these niceties a prisoner is entitled, as none of the statutes of jeofails extend to indictments; and he will continue to be so entitled, until the legislature shall see fit to interfere.
The rule, on which the counsel for the prisoner rely, is laid down in Hawkins (4) in the following words, (speaking of ind ctments upon statutes :) “ I take it for a general rule, that unless the statute be recited, neither the words contra formam statuti, nor any periphrasis, intendment, or conclusion will make good an indictment, which does not bring the fact prohibited or commanded, in the doing or not doing of which the offence consists, within all the material words of the statute.” The same rule is laid down, with equal strictness, by Hale, (5) by East, (6) and other writers on criminal law ; and it has been sanctioned by innumerable decisions in adjudged cases. The question is, whether this rule can be so applied in this case, that we ought to infer that the indictment is bad ? — In other words, are the expressions relied upon material in the description of the offence charged upon the prisoner ? 1. The first words relied-upon are, “ having knowledge of * such false making ” of the bills. — The indictment charges the prisoner with the possession of the bills, “ having knowledge that they and each of them were false, forged, and counterfeit; ” and that he aided and assisted in rendering them current as true, at the same time “ knowing that they were false, forged, and counterfeit.” But the indictment does not charge the prisoner, in the words of the statute, with “ having knowledge of the false making” of the bills; by which was meant, it is said, that to constitute the offence charged against the defendant, it is necessary that he should have had knowledge of the false making, at the time of the fabrication; not that he should have acted in concert with the counterfeiters, for that would constitute the crime of counterfeiting; but that he was in their confidence and knew their secrets. Now, if it was the intention of the act, that, to constitute this offence, there should be such knowledge, the omission is fatal; but if the words “ having knowledge of the false making ” mean no more than that he kneiv that the bills were falsely made, then the objection cannot prevail; for such knowledge is expressly alleged in the indictment. It is then merely a question of the construction of the statute.
The crime intended, for which the severe chastisement of perpetual imprisonment is prescribed, is the intention, by combination *60 with counterfeiters, of aiding in uttering spurious paper money; and the overt acts necessary to be proved, to constitute that intention, are, 1. Possession of such paper ; 2. A knowledge that it is false ; and, 3. An intention of passing it as true.
I purposely omit, now, to consider as to the species of paper par ticularly designated by the word similar; because that must be distinctly considered hereafter. But, having in possession such paper as the statute intended, with an intention of passing it as true, with the knowledge, which the legislature meant, of its being false, is all that the statute intends.
As to the possession and the intention of passing, there * s no question what is the meaning of the statute ; and it only remains to be ascertained what kind of knowledge must be proved against the prisoner, that the paper possessed and intended to be passed was false. Is it a knowledge which he must possess concomitantly with the possession and intention of passing ? If this is all, then the indictment in this respect is good , for such knowledge, as has been said, is expressly alleged. But if, to constitute the crime, it is required that the prisoner should have knowledge of the false making, at the time of the fabrication, that fact is not charged in this indictment, and the judgment must be reversed.
It would be difficult to assign a reason why such a knowledge as that last mentioned should be required, to constitute the offence It would not, on the one hand, aggravate the guilt of the culprit; nor, on the other, magnify the injury to the public. The malignity of the crime consists in an intention of injuring the community by issues of spurious paper, knowing it to be such ; and the guilt is the same, whenever and however a knowledge of its spurious nature may have been obtained. It would also require the proof of a fact of a nature incredible — that a man had a criminal knowledge of the false making, while it was going on, without a combination with the counterfeiters; a fact almost inconceivable ; and it would exempt from this punishment the most profligate, who should be proved to have the possession of such paper, an intention of uttering it, and a knowledge of its falseness; provided the knowledge did not commence with the actual making.
It would be very strange if such were the intention of the legislature ; and it would require very strong and unequivocal language, to satisfy my mind that was the meaning. But the words of the . statute relied upon, “ having knowledge of such false making,” are insufficient for that purpose ; for a man may be truly said to have knowledge of the false making of counterfeit paper, although he *61 knew * nothing of it at the time it was made. However or whenever he knows that it was falsely made, he has knowledge of the false making.
But it is said we are not to presume that any of the words of a statute have been inserted without meaning; and that unless we apply the meaning contended for to the words “ having knowledge of such false making,” they are wholly insignificant. But it is impossible to read with attention this clause of the statute, without coming to a conclusion, that either these words, or the subsequent words, “ knowing the same to be false, altered, forged, and counterfeit. as aforesaid,” must be rejected as mere surplusage. The whole clause, so far as respects this subject, runs thus: “ having knowledge of such false making, &c., shall willingly aid or assist in uttering or rendering current, as true, any such false, &c., notes, certificates, bills of credit, bank bills or notes, and for that purpose shall possess at any one time not less than ten of such similar, false, &c., notes, &c., knowing the same to be false, altered, forged, or counterfeited, as aforesaid, with intent,” &c. Now, if one had knowledge of the false making of any such paper at the time it was made, it is impossible that it should afterwards be in his possession, with the criminal intention of his uttering it, without his knowing that it was false ; so that, admitting the construction contended for by the prisoner’s counsel, that having knowledge of the false making means that he had knowledge at the time of the making, it follows of course that the subsequent words, knowing the same to be false, &c., as aforesaid,” are merely nugatory ; and then one or the other set of the words must be considered as surplusage; in which case it will be proper to give to the whole such a construction as will give effect to the manifest intention of the legislature; which is to confine to perpetual imprisonment any one who shall deliberately harbor the nefarious intention of becoming a common utterer of counterfeit money.
Besides, a contemporaneous, practical exposition of a * statute affords considerable satisfaction, as to its just construction. Now, I take the fact to be, as stated by Mr. Solicitor-General, that" the form of this indictment is that which has been used in all the prosecutions and trials, which have taken place under this statute for this offence, and that there have been trials, more or less, upon such indictments, before each of the justices of this Court. It is true, that this question has not before now been agitated; but, if the objection is well founded, it is strange that it should not before have occurred.
2. The other objection is, that bills, which the prisoner possessed with the criminal intention alleged, are not averred to be similar. — *62 It will be necessary to attend particularly to the statute, to deter mine on the validity of this objection, which depends on the question whether the word similar does or does not enter into a description of the offence charged in the indictment.
The two species of paper, relative to which the crime charged upon the prisoner may be committed, are, 1. “Any note, certificate, or other bill of credit, issued by the treasurer or other commissioner or commissioners duly authorized, for any debt of this commonwealth2. “ Any bank bill, or promissory note, payable to the bearer, signed in behalf of any company or corporation, by law licensed or authorized as a bank within this commonwealth ; or payable, or demandable therein, at the office of any banking company, incorporated by any law of the United States."—The two species, then, are certificates of the public debt of the state • and the bank bills, either of this state, or of the United Staten, •payable within this commonwealth. If one is possessed of ten such bank bills, with the knowledge and intention expressed in the statute, the crime is complete. The crime, then, may be committed in relation to state notes. But this could never be the case, if the meaning of the word similar were such as contended for by the prisoner’s counsel. For it is not, from the nature of the subject, very probable that any two, much * less ten, of those notes are similar as to the amount, or even the date, and it is not very likely that any counterfeiter would make notes similar in those respects, because that circumstance would tend to detect their falseness; nor would it at all aggravate his guilt: and hence it cannot be supposed that the legislature would contemplate such a case as alone to be punished. —What, then, is the meaning of the word similar ?
This section of the statute has described several offences — counterfeiting notes of our state; counterfeiting bank notes ; having in possession a number not less than ten counterfeit state notes, with knowledge that they were counterfeit, and an intention of uttering and rendering them current as true; and having in possession not less than ten counterfeit bank notes, either of the banks of this state, or of the United States payable in this state. And after having grouped these several offences together, the act proceeds to prescribe the same punishment for each offence. Had the statute been less complicated — that is, had the several species of paper mentioned been kept distinct—what may we reasonably presume would have been the provisions ? It would have provided, that if any one should falsely make, &c., any note, &c., issued by the treasurer, &c., for a debt of the state; or, if any person should have in his possession a number, not less than ten, of such false *63 notes, knowing them to be false, and intending to utter and render them current, he should be punished as is provided. The same provision with regard to any counterfeit bills, signed in behalf oi any company or corporation by law licensed and authorized as banks within this commonwealth; and also with regard to the bills of the Bank of the United States payable in this state. — The offence, then, described in the statute, and charged against the prisoner, is that of having in possession ten counterfeit bank bills of one of the banks mentioned in the act. The whole purpose and effect of the word similar, then, is, that of distribution to the several subjects of the section, and it does * not at all enter into the description of the offence. In this view, the indictment brings the case of the prisoner within the act — the bills were more than the requisite number, and of the same bank.
The same objection, as the last which has been considered, occurred in the case of a conviction before the Chief Justice in Middlesex. It is true it was not argued, but it was maturely considered by him, and judgment was afterwards rendered on the conviction.
But it is said that, according to the construction which I have given, the offence charged against the defendant is the same as that described in the fourth section. — That section provides a different punishment for any person, who brings into, or has in his possession within the state, any false, forged, or counterfeit bill or bills, of any bank within this state, or in any other part of the United States, for the purpose of rendering the same current as true, or with intent to pass the same, knowing the same to be false, forged, or counterfeit. — Without mentioning any other differences, it is sufficient to observe, that to constitute the crime described in the former, the possession of at least ten bills is necessary ; whereas the possession of one only, is sufficient to constitute that described in the latter.
The sixth section was cited to show that the word similar ought to receive the construction contended for in the second section. The sixth section makes provision relative to counterfeiting gold or silver coin ; and the criminal possession of it, with knowledge of its falseness, and an intention of rendering it current.
The same reasoning, which has been employed to show the meaning of that word in the second section, would show that it ought to receive the same construction in the sixth ; that the whole purpose and effect of it is, to distribute the provisions of the section to its respective subjects ; and that it does not at all enter into a description of the crime. To be convicted of the crime, the prisoner must be proved to have had in his possession at least ten gold pieces, or ten silver pieces.
*64 * Can any other be the intention of the statute ? Suppose a man has nine counterfeit Eagles, nine half Eagles, and nine of every other description and denomination of gold current in the commonwealth, with the knowledge and intention mentioned in the statute; is it possible to suppose that the legislature did not intend that he should be punished for the crime described in the sixth section ? — Again, suppose one is proved to have had in his possession nine of every denomination of bills of every bank in the commonwealth ; would it not be monstrous to say, that he was not guilty of the offence described in the second section ?
It is the unanimous opinion of the Court, (including the Chief Justice, who was present at the argument, and has since been conferred with on the subject,) that the prisoner can take nothing by his writ, and that the judgment must be affirmed.

Judgment affirmed.

 2 Leach's C. L. 672.-2 East's C. L. 981.

 1804, c. 120

 2 H. H. P. C. 193.

 2 Hawk P C. c. 25, § 110

 H. H. P. C. 170.

 2 East P C 985