## HOBBS vs. THE STATE.

1. Under the act of 1835, an indictment for passing counterfeit bank notes, may describe the notes as "forged and counterfeited," those words being synonimous.

2. A bank note as follows, "The President, Directors and Company of, &c., will pay, &c.," signed by the President and Cashier, is properly described as a promissory note.

3. Under that statute it is not necessary to aver that the bank had any legal existence.

## ERROR to Pike Circuit Court.

CARTY WELLS, for Plaintiff in error,

Makes the following

### POINTS.

1. The counts are double and repugnant, in charging the notes passed to be both forged and counterfeited.

2. They are repugnant in describing different notes from those set out in the indictment.

3. They are repugnant in describing them as promissory notes, when those set out are not notes but drafts.

4. They are repugnant in describing the notes as having been issued by the "Northern Bank of Kentucky," when those set out appear to have been issued by "The President, Directors, &c.," of said bank.

5. The counts are all defective in not averring that the corporation, issuing the notes, existed when the notes were issued or passed.

6. It is not alleged that said corporations ever had a legal existence—accepted the charter—ever issued such notes, or had power to do so.

STRINGFELLOW, for the State of Missouri.

To sustain the judgment of the circuit court the State insists:

1. That the indictment charges the offence in the words of the statute. R. C. 1835, art. 4, section 21, page 187.

2. The words "forged" and "counterfeited," as used in the statute are synonimous. Chit. crim. law 2 vol.

3. The instrument is properly described as a promissory note.

4. No venue is necessary to matters of mere description; nor is it

necessary in this indictment to lay venue to the act of forgery or counterfeiting. Chitt. crim. law 1 vol. p. 199. In an indictment for receiving stolen goods, not necessary to lay venue to the stealing.

It is not necessary under the 21st sec., to allege that the notes were passed for any consideration.

McBRIDE, J., delivered the opinion of the court.

Hobbs was indicted by the grand jury of Pike county, for passing counterfeit bank bills, and found guilty. The indicment contains nine counts. The first count charges, "that James B. Hobbs, on, &c., at, &c., a certain forged and counterfcit ten dollar promissory note, purporting to be made and issued by the Northern Bank of Kentucky, incorporated under the laws of the State of Kentucky, which said forged and counterfeited note is as follows, that is to say:

No. 785, A.                              No. 785, A.
 1 0                                          1 0
The President, Directors and Company of the Northern Bank of Kentucky, will pay on demand to W. Coles, or bearer, at Richmond, ten dollars.

Lexington, July 20, 1842.

M. T. SCOTT, Cash'r.                    JNO. TILFORD, Pres't.

Then and there feloniously did pass, utter and publish as true, to one Joseph Pugh, with the intent then and there, him, the said Pugh, to defraud, he, the said James B. Hobb's, at the time he so passed, uttered and published said forged and counterfeited promissory note, then and there well knowing the same to be forged and counterfeited contrary," &c.

The second count is like the first, with the exception that it charges that the defendant did "pass," as true, &c.

The third count charges that the defendant did "utter and publish" as true, &c.

The fourth count alleges the forged and counterfeited promissory note to have been "issued by the president, directors and company of the Northern bank of, &c., and that the defendant did pass, utter, and publish as true," &c.

The other counts charge the passing, &c., of promissory notes on the State bank of Indiana, and are framed similarly to those heretofore referred to.

After the finding of the jury, the defendant filed his motion in arrest of judgment, which being overruled, he has brought the case to this court by writ of error.

The errors assigned are :

1. The counts are double, and repugnant in charging the notes passed to be both forged and counterfeited.

2. They are repugnant in describing different notes from those set out in the indictment.

3. They are repugnant in describing them as promissory notes, when those set out are not notes but drafts.

4. They are repugnant in describing the notes as having been issued by the Nothern bank of Kentucky, when those set out apper to have been issued by the president, directors and company of said bank.

5. The counts are all defective in not averring that the corporations issuing the notes existed when the notes were issued or passed.

6. It is not alleged that said corporation ever had a legal existence —accepted its charter—ever issued such notes, or had power to do so.

The answer to the first objection is, that the indictment pursues the language of the statute. See R. C. 1835, p. 187, §21. "Every person who, with intent to defraud, shall pass, utter or publish, or attempt to pass, utter or publish, as true, any forged, counterfeited, or falsely altered instrument, or writing," &c. The words "forged" and "counterfeited," as used in the statute, are synonimous, and when used in the same connexion in all the statutes and forms, where they occur, are so used and regarded, although there is a shade of difference in their signification. See the form of an indictment at common law for forging a *fieri fiacias,* Arch. C. P. 306. In Barbour's C. T. 117, it is said, "by a decision of the supreme court of this State, (N. Y.) made since the passage of the Revised Statute, it is settled that in an indictment for forging a check on a bank, it is sufficient to allege that the prisoner falsely made, forged and counterfeited a certain check, with intention to defraud," &c. In 8 Mass. R. 63, Brown vs. the Commonwealth, the indictment charged the defendant with possessing, with the unlawful intention which constitutes the offence, "twenty false, forged and counterfeit bank bills or promissory notes, purporting," &c. In the case of the Commonwealth vs. Houghton, ib. 107, the defendant was indicted for, "that at, &c., on, &c., he had in his custody and possession more than, viz: twenty-five false, forged and counterfeit bank bills or promissory notes, : yable, &c., and no question was raised on the use of the terms "forged" and "counterfeit." From the foregoing cases, and others to

which reference has been had, we conclude that there is no substantial objection to the indictment on this point.

The second and third points embrace, as we suppose, the same objection, the third being only intended as explanatory of the second. Are the instruments set out in the indictment, notes or drafts? Webster defines a draft to be "an order from one man to another directing the payment of money—a bill of exchange." A note, "a written or printed paper, acknowledging a debt, and promising payment." Kent in his commentaries, 3 vol. 74, says, "a bill of exchange is a written order or request, and a promissory note a written promise by one person to another, for the payment of money, absolutely, and at all events." To illustrate the office of a bill of exchange, or draft, he says, if A, living in New York, wishes to receive $1000, which awaits his order in the hands of B, in London, he applies to C, going from New York to London, to pay him $1000, and take his draft on B, for that sum, payable at sight. This is an accommodation to all parties. A receives his debt by transferring it to C, who carries his money across the Atlantic, in the shape of a bill of exchange, without any danger or risk in the transportation, and on his arrival at London, he presents the bill to B, and is paid." Bills and notes are in two different forms, being sometimes made payable to such a man or his order, or to the order of such a man ; sometimes to such a man and bearer, or simply to bearer. The bank bill or note, set out in the indictment, is a direct and unconditional promise that, "the president, directors and company of the Northern bank of Kentucky, will pay on demand to W. Coles, or bearer, at Richmond, ten dollars," and is evidenced by the signature of the agents of the corporation, the president and cashier thereof. It does not resemble a draft or bill of exchange, which is drawn by one person on another, and payable to a third, and which must be duly presented for payment, otherwise the holder loses his recourse on the drawer. This point was made in the case of the commonwealth vs. Casey, 2 Pick. R. 49, when Parker, C. J., in delivering the opinion of the court said, "it is objected in arrest of judgment, that the indictment does not allege the note to be a bank bill. But we consider it to have been expressly decided, that the note of a bank is a promissory note, as much as the note of an individual ;" and reference is made to 8 Mass. R. 64, 3 Chitty's crim. law, (2 ed.) p. 947, 948, 1048, 1049.

The fourth point, which is, that the counts are repugnant in describing the notes as having been issued by the Northern bank of Kentucky, when those set out appear to have been issued by "the president, directors and company of said bank," is answered by reference to the fourth

in the indictment, which charges that the forged and counterfeit ten dollars promissory note, purports to be made and issued by the president, directors and company of the Northern bank of Kentucky, incorporated, &c. So that if there be any weight in the objection, it is satisfied by the allegation in this count, which only differs in this one particular, from the preceding counts in the indictment.

The fifth and sixth counts raise the question whether it was necessary to allege in the indictment, the actual or legal existence of the corporation—the acceptance of its charter—that it had authority to issue, and did actually issue notes similar to the one set out.

We are of opinion that it is not necessary, further than the description is concerned. By reference to the 8th section of the R. C. 1835, p. 185, it will be seen that if the promissory note charged to be forged, &c., *purports* to have been issued by any bank incorporated under the laws of the U. S., this State, or any other State, territory, government, or country, it is sufficient so to describe it, without regard to the fact whether such bank really ever had a legal existence or power to emit notes similar to the one described in the indictment. In the case in 2 Pick. R. 49, heretofore referred to, and which was an indictment for passing a forged bank bill, the judge remarks, "it is also said, that there should have been an allegation that the bank was duly incorporated; but that was not necessary, as the indictmuent states a design to defraud an individual." The bill set out in that case purported to have been issued by the merchants' bank of Providence, R. I.

We are therefore of opinion that the indictment is good, and that the circuit court committed no error in overruling the motion in arrest of judgment. The other members of the court concurring herein, the judgment of the circuit court is affirmed.