### STATE *v*. BARRETT.

In an indictment for rescuing cattle while being driven to pound, all the facts constituting the legal grounds for the distress must be particularly set forth.

If an indictment be defective, or bad on demurrer, it must be also held insufficient, on motion in arrest of judgment.

INDICTMENT, for rescuing cattle being driven to pound. The indictment alleged that the defendant, on, &c., at Amherst, &c., "with force and arms upon one John Haselton did make an assault, and did willfully, unlawfully and forcibly rescue from the possession of him, the said John Haselton, two red oxen, which he, the said John Haselton, was then and there lawfully driving to the pound in Amherst, in said county of Hillsborough," &c. The indictment contained no allegation of the cause for which the oxen were distrained or being driven to pound.

The defendant moved that the state elect to proceed only for the assault or for the rescue of the oxen; which motion, being sustained by the court, the state elected to proceed for the rescue and not for the assault.

Haselton had taken the defendant's oxen in a highway in Amherst. The State offered in evidence the following vote of the town of Amherst:

" *Voted*, That the law prohibiting horses, cattle, sheep and swine from going at large, be adopted by this town, and that the penalty to be affixed to the same shall be, for horses, three dollars; horned cattle, two dollars, and for sheep and swine one dollar;" — and the following vote was passed at a subsequent meeting:

" *Voted*, That the law prohibiting horses, cattle, sheep and swine from running at large, be enforced by this town, and that the penalty for the same be, for a horse, three dollars; horned cattle, two dollars; and for sheep and swine one dollar each."

The defendant objected to this evidence, on the ground that no by-law was alleged in the indictment, and that the votes were defective and insufficient. The court admitted the evidence, and the defendant excepted.

Haselton testified that he took the oxen in the morning, he thought before breakfast, perhaps about six o'clock; that he immediately put them into his barnyard, the gate of which he fastened with a chain and padlock; that after that he went to the defendant's house, about a quarter of a mile distant, and informed the defendant where the oxen were, and that he could have them by paying one dollar; that he took the oxen from the yard, he should think pretty near noon, should think probably between 11 and 12 o'clock, and was driving them by the defendant's house to the pound, when the defendant forcibly rescued them from his possession. Another witness testified that he thought it was about 9 o'clock in the forenoon when Haselton took them from the yard and drove them toward the pound.

The defendant objected that the indictment could not be maintained, because Haselton had put the oxen in his yard and kept them locked up there so long, and because he had delayed so long in driving them to pound after he first took them in the highway.

The court overruled the objection, and the defendant excepted.

The court instructed the jury that when Haselton first took the oxen in the highway it was his duty to drive them to pound within a reasonable time, and with reasonable dispatch and expedition; that whether his putting them in his barn-yard and keeping them there as long as the jury should find they were kept there, was an unreasonable delay, under all the circumstances of the case, was a question of fact for the jury; and that, if when the oxen were rescued, Haselton was driving them to pound within a reasonable time after the first taking, the fact

that he had put them in his barn-yard and kept them locked up there would be no defense.

To these instructions the defendant excepted, and a verdict being returned against him, he moved to set aside the same and for a new trial. The defendant also moved in arrest of judgment, and the questions of law arising upon the case were reserved.

*Stevens*, Solicitor, for the state.

1. The allegation in the indictment follows closely the language of the statute, and is sufficient, especially after verdict.  Comp. Stat., ch. 143, sec. 15; *State* v. *Abbott*, 31 N. H. 434; *State* v. *Hoit*, 23 N. H. 355; *United States* v. *Batchelder*, 3 Gall. 15, cited 2 U. S. Dig. 524, sec. 147. It is sufficient to allege the rescue. The term "rescue" has a fixed, definite and legal meaning and force; as much so as "stealing" or "assault." 2 Bouv. Law Dict. 469, "Rescous."

2. The introduction of the by-law was only one step in proving the right of the prosecutor to drive the cattle to the pound.  It was evidence purely, and its existence need not be alleged.

3. The votes of the town are informal, but the language is sufficiently clear and distinct to show that the town adopted by vote—intending to make it a law—the prohibition which, by the statute, they had the power to do, against cattle running at large.

4. The question as to what, under the circumstances, would be a reasonable time or an unreasonable delay, was properly left to the jury, and their verdict settled it.

*G. Y. Sawyer*, for the defendant.

The oxen were not in the custody of the law at the time of the alleged rescue, but merely in that of the distrainor; Salk. 247; Ld. Raym. 105; Rast. Ent. 444; and it is no rescue, or rather the rescue is lawful in such case,

if the distress was unlawful. Co. Lit. 47; 160, *b.*; 161, *a.* Where the goods distrained are not in the custody of the law, the cause of distress must be alleged, even in a declaration in a civil suit for the rescue; *a fortiori*, in an indictment; 2 Ch. Pl. 346, note *g;* and so are all the precedents. It is not enough to allege that the goods were lawfully distrained. The facts constituting the legal ground for the distress must be set forth, as that the rent was in arrear; that the cattle were doing damage; that they were straying in violation of some law; and if it be the mere by-law of a town, then that must be set forth, as in the case of all private acts, where they are essential to the case; otherwise the defendant is not informed of the case which he is to be prepared to meet. With no other allegation than that the oxen were being lawfully driven to pound, the government would be at liberty to prove, if they could, that the oxen were distrained damage feasant; and if this was met by the defense, then to prove that they were straying contrary to law. Under this form of pleading, the defendant could adopt no other course, in his preparation for the defense, than to furnish himself with evidence to disprove every possible ground of legality in the distress.

NESMITH, J. It is necessary to refer to the first section of chapter 143, and to the seventh section of chapter 32 of the Compiled Statutes, to obtain a definition of the crime denominated a rescue, and its mode of punishment. Both the offense, as created by statute, and its penalty are there found. At common law, a rescue is defined as the taking away and setting at liberty against law, a distress, taken for rent, or services, or damage feasant. 1 Russ. on Crimes 410; 2 Ch. Cr. Law; *Rex* v. *Bradshaw,* 7 C. & P. 233. To constitute this offense under our statutes, it must appear that the property was wrongfully taken from the party who had at the time the actual legal

custody of it; — in this case, that the oxen were found either damage feasant or going at large contrary to the statute, and that the complainant was about to impound them for the cause assigned; and the respondent, well knowing the premises, unlawfully, and against the will of the complainant, with force and arms, rescued the said animals out of his custody, and prevented the complainant from impounding the same, contrary to the form of the statute in such cases made and provided, &c. Bell's Justice & Sheriff, 39; Fitzherbert's N. B. 230; *Rex* v. *Bradshaw, ante ; Vinton* v. *Vinton,* 17 Mass. 344; Bac. Ab., Rescue.

In the case before us there is a material omission in the indictment of any allegation that the oxen were found either in the close of the complainant damage feasant, or wrongfully at large in the streets of Amherst, in violation of the statute provisions provided in such cases. It is not enough to allege that the animals were lawfully distrained; the facts constituting the legal grounds for the distress must be particularly set forth, so that the respondent may be enabled to prepare his defense.

The general rule is, that indictments upon statutes must state all the circumstances which constitute the definition of the offense in the act, so as to bring the defendant precisely within it. 1 Ch. Cr. Law 232; *State* v. *Gove,* 34 N. H. 515. The omission of any fact necessary to constitute the offense will be fatal. Whart. Cr. Law 117. No general allegation of unlawfulness, nor of being against the statute, nor any conclusion, will make good the indictment, if it do not bring the act prohibited within the material words of the statute. Whart. Cr. Law 138.

An indictment, defective or bad on demurrer, must be held insufficient, on motion, in arrest of judgment. *Commonwealth* v. *Child,* 13 Pick. 198; *Commonwealth* v. *Brown,* 8 Mass. 59; *State* v. *Abbott,* 31 N. H. 434; *State* v. *Hoit,* 23 N. H. 359. The character and requisites as well as

the defects of an indictment of this nature, are well considered and illustrated in a recent case. *State* v. *Beasom*, 40 N. H. 367. In this case,

*Judgment must be arrested.*