## Charlestown.

STATE OF WEST VIRGINIA *v.* CHARLTON.

AND

STATE OF WEST VIRGINIA *v.* ALLUM.

Decided September 10, 1877.

1877.
August Term.

1. An indictment for selling without license intoxicating liquors to be drank where sold, uses the language of the 1st section of chapter 99 of Acts 1872-3 creating the offense, charging that the defendant, at a given place in the county, on a given day, did sell to a certain person, naming him, intoxicating liquors to be drank in, upon or about the building *or* premises where sold, without first obtaining a State license therefor according to law. HELD:

    I. Upon demurrer this indictment is fatally defective, for uncertainty in charging that the liquor was to be drank either in the building or upon the premises.

Similar indictments were found in the county court of Marshall county, one against Absalom Charlton, the other against William Allum ; the defendants were respectively found guilty by juries empannelled to try the respective cases, and judgments were entered up upon the verdicts. Writs of error were allowed to the circuit court of that county, and the judgments were respectively affirmed by that court. Hon. T. Melvin presiding. Thereupon the defendants respectively obtained writs of error to this Court.

GREEN, PRESIDENT, furnishes the following statement of the cases :

Absalom Charlton was indicted in the circuit court of Marshall county on October 21, 1873. The indictment

charges that "Absalom Charlton on the 1st day of Octo-
ber 1873, at his house in said county, did sell at retail
to Robert Bodocher intoxicating liquors to be drank in,
upon, or about the building or premises where sold, with-
out obtaining a State license therefor according to law."
This indictment was certified to the county court for
further proceedings in the manner required by the
statute. The defendant then demurred to the indict-
ment, and the State joined in the demurrer, and the court
thereupon overruled the demurrer; the jury who tried
the case on the plea of not guilty, found the defendant
guilty and assessed the fine at $30.00; and the court
entered up a judgment "that the State recover against
the defendant $30.00, the fine by the jurors in their ver-
dict aforesaid found, and the costs of this prosecution;
and also that said defendant be imprisoned in the jail of
said county without bail or mainprise, for the space of
ten days, and afterwards till he pay the fine and costs
aforesaid, or be otherwise discharged by due course of
law." A writ of error and *supersedeas* was awarded, and
the circuit court of Marshall county affirmed this judg-
ment; and the defendant obtained a writ of error from
this Court. The case of the State of West Virginia *v.*
William Allum is in all respects similar; and a like judg-
ment was rendered by the county court of Marshall
county, and affirmed by the circuit court of Marshall
county, and brought in like manner to this Court by a
writ of error.

*Attorney General,* for the State.

*Robert McConnell,* for Charlton.

*Hanson Criswell,* for Allum.

GREEN, PRESIDENT, delivered the opinion of the
Court:

The question for consideration in these cases is:
Should the court on the demurrers to the indictments

1877.
August Term.

State
v.
Charlton.
And
State
v.
Allum.

severally have sustained the indictments as sufficient? The indictment in charging the offense uses the language of the statute, see chapter 99, section 1 of Acts of 1872–3, p. 253. In indictments it is generally proper and sufficient to describe the offense in the very terms used by the statute for the purpose. *Young's Case*, 15 Gratt. 666; *Burner's Case*, 13 Gratt. 778. To this general rule there are exceptions. Thus in some cases it is necessary for the allegation in the indictment to go beyond the words used in the statute; numerous examples are given of this in Bishop's Crim. Pro., vol. 1 section 369 to 374, of which it is unnecessary to speak. An instance however where the words of the statute ought not to be used, though not properly an exception to this general rule, exists, which I will specify, as it bears directly on the validity of the indictments in the cases before us. Where a statute, on which an indictment is founded, enumerates the offenses or intent necessary to constitute the offenses disjunctively, the indictment is fatally defective, which uses the words of the statute charging them disjunctively. See Wharton's Crim. Law, vol. 1 section 295; 1 Bishop's Crim. Pro., section 334. Thus in *Angel's Case*, 2 Va. Cases, p. 231, it was held that where the statute said, " whoever shall unlawfully shoot or stab another, with intention to maim, disfigure, disable *or* kill shall be " &c., the indictment was properly drawn which charged the act done " with intention to maim, disfigure, disable *and* kill," and that the party on such an indictment should be found guilty, if his intention was only to maim, disfigure and disable and not to kill. If this indictment had followed the words of the statute, it would have been bad, for it would have violated the well established rule that an indictment must not state the offense disjunctively, when it is thereby left uncertain what is really intended to be relied on as the accusation. The question for consideration in the cases before us is, do the indictments in these cases violate this well established rule? It is uncertain

from these indictments whether the State meant to rely upon the selling by the accused of intoxicating liquors at his house to be drank in the building, or whether it meant to rely upon the selling of intoxicating liquors by the accused at his house to be drank upon the *premises*. That is not in the building, but upon the lot adjacent to his house? It is insisted by the Attorney General that the indictment shows that the State meant only to rely on the accused selling intoxicating liquor in his house, that the words building and premises as used in the indictments, meant the identical same thing, and that the expression building or premises, as used, meant the same as building, to-wit: premises; the word premises meaning the same as the preceding word building. If this be the true interpretation of the words used in these indictments, then they are clearly valid, there being no legal uncertainty as to what accusation the State relied upon: See *Commonwealth* v. *Gray*, 2 Gray 501; *Brown* v. *Commonwealth*, 8 Mass. 59. If however, the statute, chap. 99, sec. 1, of Acts of 1872–3, page 253, intended to punish not only the selling of liquor in the building where sold, but also upon the premises adjacent to said building; then this indictment which uses the identical words of the statute, must be interpreted in the same manner. The meaning of this act seems to me clear, the language is "in, upon, or about the building or premises where sold." The natural meaning of this is "in the building where sold, or upon or about the premises adjunct to the building where sold." If the word premises meant in this statute, or indictment, the same as building, then we construe the act and indictment as though it read " to be drank upon the building where sold," a construction which seems absurd. That the Legislature by this act intended to punish the selling, without license, of intoxicating liquor to be drank not only in the building, but "upon the premises adjunct thereto, appears from the further prohibition immediately following: "his selling such intoxicating liquor in any adjoining

1877.<br>
August Term.<br>
<br>
State<br>
v.<br>
Charlton.<br>
And<br>
State<br>
v.<br>
Allum.

1877.
August Term.

State
v.
Charlton.
And
State
v.
Allum.

room, building, or premises, or other places of public resort connected with the said building."

The Attorney General relies, to sustain these indictments, on the cases of *Cunningham* v. *State*, 5 W. Va. 508, and *Morgan's Case*, 7 Gratt. 592, where it was held not to be error to charge the offense of selling spirituous liquors, wines, &c., without license, by using the word "or" in lieu of "and" in describing the various kinds of liquors and drinks, charged in the indictment to have been sold without a license. In reference to these cases it is to be observed, that Judge Berkshire, in delivering the opinion of the Court in the first of them, says in reference to this objection to the indictment: "if this were an open question, I am disposed to think there would be much force in it. But in *Morgan's Case*, 7 Gratt. 592, it was held that it was no error to use the word "or" (as in this case) instead of the word "and" in describing the various kinds of liquors and drinks, charged to have been sold in the indictment. That case therefore must be conclusive of the present case." The Court in *Morgan's Case* cited no authorities and expressed no opinion, simply affirming the judgment below. And Bishop in his Criminal Procedure, vol. 1, §337, says that this case is contrary to the general doctrine. And the contrary has been held elsewhere, see section 336 and authorities there cited. It may be perhaps that the indictment in *Morgan's Case*, 7 Gratt. 592, was held good, because it might have been considered that as the State could not reasonably be required to allege or prove the particular kind of spirituous liquors sold, it ought not to make an indictment bad for uncertainty, to allege that it was of one kind or another. If this was the ground of this decision, it would be inapplicable to the cases now under consideration, as the State could without any difficulty show, and ought therefore to allege, whether the liquor was sold to be drank in the building, or on the premises adjunct to the building. But be the reason what it may for the decision in *Morgan's Case*, it ought not to

be regarded as overthrowing the general rule, that an in-dictment ought not to state the case disjunctively, when it is thereby left uncertain, what is really intended to be relied on as the accusation. And while *Morgan's Case* must govern us whenever a case like it arises, yet we cannot safely extend it to cases which differ from it and fall within this general rule.

The judgment of the circuit court in each of these cases must therefore be reversed and annulled; and this Court proceeding to render such judgment, as the circuit court should have done, doth reverse and annul the judgment of the county court, and doth sustain the demurrers to the indictments in each of these cases, and doth order that the defendants, Absalom Charlton and William Allum, severally go quit of the offenses, charged against them in said indictments severally.

JUDGMENTS REVERSED.