# CHARLESTON.

### STATE *v.* LOREN NEAL.

## Submitted May 6, 1924.    Decided May 13, 1924.

CRIMINAL LAW—*Articles and Testimony of Seizing Officers Admissible Where Search Warrant Not Produced, but Loss Satisfactorily Established.*

> Where in the prosecution of a criminal case the state does not produce the search warrant under which certain incriminating evidence was secured, but by undisputed proof explains the loss thereof, and shows that it was in proper form to authorize the search of defendant's premises, the articles seized and the testimony of the officers making such search are properly admissible against the defendant.

Error to Circuit Court, Fayette County.

Loren Neal was convicted of a violation of the Prohibitory Law, and he brings error.

*Affirmed.*

*C. R. Summerfield,* for plaintiff in error.

*E. T. England,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for the State.

MEREDITH, PRESIDENT:

Defendant seeks to reverse the judgment of the circuit court of Fayette County by which he was convicted under an indictment charging that he "did unlawfully make and have in his possession, and under his control, and did have an interest in a certain mixture of fermenting substance and materials, commonly known as 'mash' for the purpose of making intoxicating liquors, against the peace and dignity of the state."

He assigns as errors:

(1)   That the verdict is contrary to the law and the evidence.

(2)   That the trial court improperly permitted the state to introduce evidence that the arresting officers found certain portions of a moonshine still and a lard can and wooden tub containing mash on defendant's premises.

(3)   That the trial court refused to allow defendant to introduce competent evidence in the case.

(4)   That the state introduced improper evidence as to an alleged search warrant under which the officers claimed to have searched defendant's premises.

Other errors assigned relate to the instructions and to the court's refusal to disturb the verdict.

Although extensively argued in defendant's brief, we find little that can be said relative to the lack of evidence to support the jury's verdict. Three officers, armed, as they claim, with a search warrant, in broad day-light, made a search of defendant's residence, outbuildings and garden. In an outbuilding they found a copper boiler such as is commonly used as part of a moonshine still, while in the garden, secreted in a pile of leaves, and underneath a wooden plank, they found partially buried in the ground a lard can containing a quantity of cracked corn mash. On a rock pile nearby was a wooden tub partly covered with paste-board also containing mash, and nearby they found a metal coil covered with brush and leaves. One of the receptacles, probably the copper boiler, contained a quantity of berries mixed with water. The coil and cap seems to have fitted the boiler, and the only mechanism absent, necessary to complete the still, was the cooling keg. The outbuilding in which the boiler was found was but a few feet from defendant's residence, and the other articles were all found within two or three hundred feet from the house and within the garden fence.

Defendant testified that he had no knowledge of any of the things found, and offered proof tending to show that they were "planted" on his premises with a view of framing his conviction. Two or more witnesses testified to having seen persons unknown to them digging a hole near the spot where the lard can was found, and that they saw these per-

sons secrete a can in the hole. This is supposed to have occurred a few days prior to the search. Defendant also showed that the spot where the can was hidden was very near a much frequented path leading from defendant's store. This evidence was to indicate that the place was not a likely one for the hiding of moonshine apparatus. The inference of defendant's argument that the circumstances shown raise but a suspicion of guilt is not well founded. He was charged with having mash in his possession, and the discovery thereon hidden in his garden casts more than a breath of suspicion on his conduct.

All of these matters went to the jury, as we think, under proper instructions, and we can not say that the evidence was insufficient to support the conclusion reached by it.

Defendant argues in support of his second and fourth assignments of error that the boiler, coil, can, tub and mash were improper evidence because, as he alleges, the state did not prove that the officers who made the search were armed with a proper search warrant. All three officers were witnesses at the trial, and they all testified that they made the search under a warrant, that it was in the possession of officer Holstine. It was not produced at the trial, but they state that it was issued by Justice of the Peace Staton either on the day of the arrest or on the day preceding. They did not testify definitely as to its contents, but Staton, who was also called, gave full information both as to its contents and as to the reason for not producing it at the trial. He stated that when the warrant was returned to him by Holstine he placed it on a hook in the sheriff's office, and that he has since been unable to find it either there or elsewhere among his papers. He testified that the warrant was in regular form, and that it directed a search of defendant's residence and premises. To illustrate the character of the warrant used, Staton was permitted to introduce in evidence a printed form of warrant, the kind customarily used by him. The copy in evidence was of course in blank, but the witness testified that it was the same form of warrant as was issued in defendant's case. Despite defendant's objections, and despite a considerable reluctance on our part to seemingly justify the state's negligence in losing one of the most im-

portant documents in the record of the case, there seems to be no valid reason in this case why he should hold that the warrant was not sufficiently proved. Of course, the best evidence would have been the instrument itself, but when its absence was explained, its contents, like the contents of most other documents were open to secondary proof. While Staton did not testify precisely as to each word in the missing warrant, he did give its substance as to each essential particular. This seems to be sufficient.

> "When a public record is *lost* or *destroyed*, the same situation exists as for private documents lost or destroyed; hence, as already noticed (ante, §2105), verbal precision of proof can not be required, but entirety of material parts must be insisted upon. The *substance* of the missing document suffices; and a *statute* sometimes expressly sanctions this for specific classes of records." 4 Wigmore, Evidence (2d. ed.) §2107.

This rule, however, is not designed as an excuse for such carelessness in handling the warrant as is evidenced by this and other records which have come to our attention. Proof of a search warrant is often of primary importance, it is only through it that real evidence can in many cases be admitted. It is solely because of the positive character of the testimony in this case that the rule can be applied, and that we can hold that the evidence adduced under it was properly considered.

Three instructions were given for the state over defendant's objection. The complaint as to the first is that it directed the jury to find defendant guilty if it believed that he had mash in his possession or control either on his own premises or on the premises of another, for the purpose of making intoxicating liquors. It is insisted that the indictment does not involve the possession of mash on another's premises. There is no merit in this point. The gist of the offense is not the locus of the possession and control, but the fact and purpose thereof. Defendant addresses no argument as to state's instruction No. 2. All of his objections to instruction No. 3, relative to the weight of circumstantial evidence, were embraced in his own instruction No. 7 and other instructions

given in his behalf, and we think the jury were fully informed on this subject.

Defendant offered eleven instructions. Numbers 1, 6 and 11 were refused. Number 10 was amended and given. No. 1 was peremptory, and was founded on the alleged insufficiency of the evidence. Number 11 would have left with the jury the question whether the evidence of the officers relative to the finding of the mash was admissible under the warrant. Under the circumstances of this case that was plainly not a jury question. No. 6 was clearly covered by No. 5. They were all properly refused. As disclosed by defendant's assignments in his application for writ of error, his original instruction No. 10 would have submitted to the jury the proposition that defendant's testimony that he knew nothing of the mash was uncontradicted by any other witness or circumstance. This proposition as put was not only abstract but inaccurate. It was properly eliminated by the court's amendment.

In discussing his peremptory instruction, defendant asserts the proposition that under the words of the indictment "did unlawfully make and have in his possession and under his control an interest in mash" he was only charged with unlawfully "making" mash, not with "possessing" it. This construction is a play upon the sentence structure clearly without substance or foundation. It may be true that the verdict "guilty as charged in the indictment" leaves some doubt as to which of the charges the jury found defendant guilty of, but any relief as to that is not now available.

The verdict and judgment were arrived at under sufficient evidence and proper instructions, and the case will be affirmed.

*Affirmed.*