# CHARLESTON.

### STATE v. JESS BEALL.
### (No. 5130.)

Submitted February 3, 1925. Decided February 10, 1925.

1. INTOXICATING LIQUORS—*Proof Arousing Suspicion That Accused Procured Liquor to be Placed in Secreted Spot to be Afterwards Removed by Him is Not Sufficient to Sustain Conviction of Possession Thereof.*

   Proof of facts and circumstances which arouse suspicion that defendant had procured some one to place moonshine liquor in a secreted spot to be afterwards removed by defendant, is not sufficient to sustain a conviction under an indictment charging him with having in his possession such moonshine liquor. (p. 194).

2. CRIMINAL LAW—*Circumstantial Evidence as Basis for Conclusion of Guilt Should Exclude, Beyond all Reasonable Doubt, Every Hypothesis But One on Which Conviction is Based.*

   Where a conclusion of guilt is based upon circumstantial evidence, it is essential that the evidence should beyond all reasonable doubt actually exclude every hypothesis but the one on which the conviction is based. (p. 193).

Error to Circuit Court, Lewis County.

Jess Beall was convicted of possession of moonshine liquor, and he brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*L. H. Barnett,* for plaintiff in error.

*E. T. England,* Attorney General, and *R. A. Blessing,* Assistant Attorney General, for the State.

LIVELY, PRESIDENT:

Upon an indictment charging him with having in his possession a quantity of moonshine liquor defendant was convicted and sentenced to serve two months in jail and to pay a fine of $200.00. This writ of error is to that judgment and sentence.

There is little controversy of fact. The sheriff and his deputies who were witnesses at the trial had information and knowledge that a jug of moonshine liquor was buried in a field nearby a covered bridge near Polk Creek in Lewis County. In order to detect the offender they had been watching this cache of liquor by night, lying in the bushes some distance therefrom. On Tuesday night in the fore part thereof on May 19, 1923, the sheriff, O. P. White, and his deputy, Roscoe White, while guarding the buried liquor as above indicated, observed an automobile drive near the covered bridge, on the other side of the creek, stop, and after the lights were turned off, three persons alight therefrom and come through the bridge into the field. These persons were Roy Beall, Carl Hacker and Jess Beall, the defendant. Roy Beall was observed to part from his two companions, and go out of view, and after being gone some time, returned carrying a small jug in his hand. It appears that before he reached his two companions, defendant and Hacker, they came down through the field to where the officers were hiding and within a short distance of them and appeared to be looking at them. The officers, realizing that they had been discovered, stepped forward and arrested defendant and

Hacker. Roy Beall was not arrested, it appearing that he had left the field and his whereabouts was then unknown. Jess Beall and Hacker were then conveyed to jail. Upon reaching the car parked near the bridge the officers found therein a number of bottles and corks, a funnel, one or two traveling bags, and a mattock. They returned the following day for the purpose of placing Roy Beall under arrest, and in making further investigation they found a gallon jug of moonshine liquor secreted under the sidewalk near the road, and they also possibly found a shovel in the near vicinity. In addition they found another five-gallon jug of liquor secreted in the ground in the bushes where they had been lying. On the night before, they had been lying in wait on almost the very spot where this last mentioned five-gallon jug was afterwards found. Jess Beall had no liquor in his physical possession or about his person when arrested; nor did he have any bottles or receptacles for the same. It appears that defendant, who was a nephew of Roy Beall, lived quite a distance from the town near which his uncle resided, and on the preceding Saturday had come to his uncle's house on a visit and for the purpose of obtaining employment in the town as a teamster. He afterwards did obtain employment and at the time of the trial was operating his team in the town as a teamster. It further appears that being in the town that night with his uncle and Hacker, they entered the car, Jess Beall stating in his evidence that he was going to his uncle's house to stay all night. They proceeded to Polk Creek where the incidents above recorded transpired. Defendant testified that he made no prior arrangements concerning liquor and was simply accompanying his uncle for the purpose above indicated. He was not allowed to testify, over objection by the State's attorney, that he did not have possession of or interest in the liquor; the court being of the opinion that the possession of the liquor was a question of law and fact for the court and jury. He was, however, permitted to say that he had no liquor or bottles on his person that night and that he had no possession, ownership or interest in the bottles and paraphernalia which were found in the car; that they were simply in the car in which he was

traveling. Roy Beall, who was offered as a witness for defendant, was not allowed to say where and from whom he got the small jug of liquor which he was seen carrying when he returned within the view of the officers. He was permitted, however, to say that defendant had no interest in the car or paraphernalia which was found therein; and was permitted also to state the circumstances of defendant's visit to him for the purpose of obtaining work as a teamster and how he happened to be in the car that night. Defendant stated that after he and Hacker had entered the field the officers were observed and they proceeded to approach them, Hacker thinking it was some parties he was looking for.

It will be observed that there is little or no conflict in the evidence, the controlling question being whether under this state of facts defendant was guilty of having in his possession moonshine liquor. Defendant contends that the evidence is insufficient; while the Attorney General argues that these facts point to the conclusion beyond a reasonable doubt that defendant was, in fact and in law, in possession of the contraband liquid. By instruction No. 3 offered by the State the court told the jury as a matter of law that if any person placed the liquor where found under any arrangement with defendant so to do, the liquor when so placed was in defendant's possession; "and if the defendant himself placed the said liquor at the said point, it was in his possession, although it may not have been on his own premises; and if the jury believe from the evidence beyond a reasonable doubt that the liquor was placed at said point by the defendant himself or by any one for him under an arrangement with the defendant so to do, they should find the defendant guilty as charged in the indictment." There is no direct evidence that defendant placed the liquor there himself or that any one else placed it there for him by pre-arrangement. These conclusions could only be arrived at by the circumstances which have been detailed. It cannot be said that these facts impel beyond a reasonable doubt the conclusion that defendant either placed the liquor there or had it placed there for him by pre-arrangement. It is entirely possible and not inconsistent with the theory that Roy Beall or Hacker had made

arrangements with some person unknown to cache the liquor
for them without the concurrence or knowledge of defend-
ant. It will be remembered that the first five gallons of
liquor which the officers had discovered and were guarding,
had been placed there before defendant even came to the
neighborhood on his visit, and there is nothing direct or by
inference which would connect defendant with the liquor
before he came on the visit. The conclusion of guilt rests
purely on the circumstances detailed. It is well settled in
the case of *State* v. *Flanagan*, 26 W. Va. 116, 122, that evi-
dence of this character must be consistent with the hypothe-
sis of the guilt of the accused; and that it is essential that
the circumstances should to a moral certainty actually ex-
clude every hypothesis but the one of guilt of the accused.
The most that can be said from an analysis of the evidence
is that it furnishes a strong suspicion that defendant knew
that his companions were on a mission to obtain liquor to be
placed in the bottles in the car and that he was lending his
presence to a shady and illegal transaction. It creates an
inference of strong suspicion that he was in some way con-
nected with the transaction; but suspicion, however strong,
is not sufficient to convict. *State* v. *Chafin*, 78 W. Va. 140,
where Judge WILLIAMS said: ''To sustain the indictment it
was necessary to prove the actual commission of the wrong,
not simply a purpose to commit it.'' And in *State* v. *White*,
66 W. Va. 45, it is said: ''Proof of facts which tend only
to arouse suspicion of guilt, but which do not prove the of-
fense charged, are not sufficient.'' The evidence is not suf-
ficient to warrant the conclusion beyond a reasonable doubt
that defendant either placed the liquor where it was found
or that some one placed it there for him by previous arrange-
ment. Moreover, we think it entirely relevant and proper
for defendant to testify that he had no interest whatever in
the liquor where and when found.

Judgment will be reversed, the verdict set aside and a new
trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*