# CHARLESTON.

## STATE *v.* L. B. HENDERSON

### (No. 5660)

Submitted March 8, 1927.   Decided March 15, 1927.

1.  CRIMINAL LAW—*Errors in Rulings on Evidence Are Waived, if Not Made Ground to Set Aside Verdict, or Incorporated in Special Bill or Bills of Exception Showing Evidence and Court's Ruling.*

    As this court has often held, alleged errors in the admission or rejection of evidence are waived, if not made the ground of a motion to set aside the verdict, or incorporated in special bill or bills of exception showing the evidence and the ruling of the court thereon.

    (Criminal Law, 17 C. J. §§ 3350, 3421, 3422, 3423.)

    (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Taylor County.

L. B. Henderson was convicted of owning and operating a moonshine still, and he brings error.

*Affirmed.*

*W. P. Samples,* for plaintiff in error.

*Howard B. Lee,* Attorney General and *J. Luther Wolfe,* Assistant Attorney General, for the State.

LIVELY, JUDGE:

L. B. Henderson was found guilty by a jury of owning, operating, &c., a moonshine still, and was sentenced to imprisonment for three years.

In defendant's petition for this writ errors are charged relating to the introduction and refusal of evidence, and the refusal of the motion to set aside the verdict; and to the overruling of his demurrer to the indictment. The argument in the brief is upon the introduction of illegal evidence obtained by the officers when the premises of John Henderson (the father of defendant) were searched under a search warrant claimed to be void; and to the introduction of an alleged confession by defendant.

The indictment is in the form set out in Sec. 37, Chap. 32-A, Code, and while the exact date of the offense is not charged, it is alleged to be within one year next preceding the finding of the indictment. It is sufficient in substance and form.

The pertinent facts are: Bolyard, a deputy sheriff, accompanied by two state policemen having a search warrant, went to the premises of John Henderson, the father of defendant, in May, 1925, and found a complete still about 250 yards from the dwelling house, in a near by woods, and about 50 gallons of mash in the same place, all on John Henderson's farm of about sixty acres. The still bore evidence of recent use. In the dwelling the officers found about one gallon of moonshine liquor, some of it in a dresser drawer in the sitting room. John Henderson was not at home. Defendant, 27 years old, lived at his father's home and worked at night at a glass plant about two and one-half miles away. He and Sam Ball, a neighbor, were at the house in a room where defendant was preparing to shave, and where some of the liquor was found. They were arrested and taken to jail. This was on Saturday, and the following Monday defendant signed a statement in the office of the prosecuting attorney and in the presence of defendant's father, younger brother, Bolyard, the deputy sheriff, and the prosecuting attorney, in which he stated that he and Sam Ball operated the still the preceding fall on the Bradford Loar place; later moved to the Bill Griffey place,

and used it there, and then moved it to where the officers found it, and last used it on the morning of the arrest and made the liquor which the officers found; and that no person other than Ball and himself, "had anything to do with the still."

When defendant went upon the stand he denied knowing anything about the still, its use, ownership or operation, except that Ball told him about noon of the day of the arrest before the officers came, that he (Ball) had brought a still to the farm. He says he made the statement and swore to it, because Bolyard told him they would send his father to the penitentiary, and he signed the statement to save his father, and that it was a false statement made on Bolyard's statement that he would give him (defendant) a square deal. The father, brother, and Earnie Luzadder were present in the jail and heard the conversation between Bolyard and defendant prior to going to the office of the prosecuting attorney where the statement was prepared and signed. The father and brother, and perhaps others, were present at the office when the statement was prepared and signed. There is evidence corroborative of defendant in respect to the making of the confession in writing. None of these witnesses, however, say that any threats or inducements were made or offered by Bolyard or the prosecuting attorney. The substance is that Bolyard told defendant it looked as if the father would perhaps be convicted, the still having been found on his premises, and that if defendant told the true facts he would get a square deal. Bolyard says that on the day of the arrest on the way to jail, defendant told him that he and Sam Ball were the only persons interested in the still. He says he told defendant in the presence of the father, brother and Luzadder to tell the truth about the matter. Newlon, the sheriff, on one occasion heard Bolyard and the father tell defendant to tell the truth about the matter, without telling him what to say. The father and brother had been in conference with the prisoner on the day before the alleged confession, the deputy sheriff being present.

The errors urged and argued in the brief are: (1) It was error to allow the officers to give evidence of the finding of

the still, mash and liquor; and (2) To admit the confession.

We do not find any special bill or bills of exception setting out the evidence objected to, and the ruling of the court thereon; nor was the introduction or refusal of evidence made a ground for the motion to set aside the verdict and grant a new trial. Can we consider these alleged errors? We could do so of course; but it would be violative of a rule established by a long line of decisions to the effect that alleged errors in the admission or rejection of evidence not saved by special bills of exceptions showing the evidence admitted or rejected, or not made the ground of a motion to set aside the verdict specifically stating the evidence admitted or rejected, will be deemed to have been waived. *State* v. *Noble,* 96 W. Va. 432; *Coal Co.* v. *Virginian Electric & Machine Works,* 94 W. Va. 300; *Bartlett* v. *Bank,* 77 W. Va. 329; *Halstead* v. *Horton,* 38 W. Va. 727; *Gregory* v. *Railroad,* 37 W. Va. 606; and *State* v. *John,* 136 S. E. 842, handed down this term.

The motion to set aside the verdict seems to have been based on no specific or general ground. The record simply says, ''Defendant moved the court to set aside the verdict of the jury and to grant him a new trial, which motion the court overruled, to which ruling of the court the defendant excepted.'' If we interpret this motion as being for the reason that the verdict was ''contrary to the law and the evidence,'' we find that the only evidence of the ownership, interest in, &c., of defendant in the still, is the fact that he and Ball were found together in the dwelling with moonshine liquor in the room, and a moonshine still in the woods near by, bearing evidence of recent use; and the confession of joint ownership and operation made by defendant. Without that confession the circumstance of the possession of the liquor would scarcely be sufficient to justify ownership or operation of the still.

The confession on its face denotes unequivocal joint ownership and operation by Ball and defendant; and, waiving the rule that no proper preservation of error in its introduction was saved, we cannot see that there was error in its submission to the jury. The jury were instructed that if they believed from the evidence that the confession was not made freely and voluntarily, or was induced by threats or promises

of reward, then they should reject it from consideration, although they might believe it true; but if they believed it to have been made freely and voluntarily or without any threats or inducements of any kind, then they might consider it together with the other evidence and give it such weight as they might consider it entitled to. Defendant says this confession was not true and was made to shield his ''poor old father'' from serious trouble. Why he implicated himself as the joint owner and operator, in order to shield his father does not appear. In explaining why he stated in the confession that the still had been operated on near by farms prior to bringing it to his father's farm, he says that Ball told him on the day of the arrest that it had been so operated. He places ownership in Ball. Why he did not place it on Ball when he made the confession, if that was the fact, does not appear. That would have shielded the father without implicating himself. No one suggested to him, so far as the record shows, that he should implicate himself. He attempts to explain it on the plea of ignorance. It was within the province of the jury to determine which of his two statements, thus diametrically opposed, was true.

We note that the evidence of the finding of the still and liquors was objected to on the ground that the search warrant for the father's premises was void. When the warrant was offered defendant objected and the court did not let it go to the jury. It is not a part of the record and we do not know its form or contents. It appears to have been for a search of the premises of the father, and the court evidently took the view that it was immaterial on the trial of the defendant. We do not pass upon the point, because it is not properly raised by this record, as hereinbefore pointed out, but there is respectable authority for the proposition that the constitutional provisions against unreasonable searches and seizures are personal; and the accused cannot object to evidence obtained against him by an illegal search and seizure of the property of another person. *Comm.* v. *Flynn,* 196 Ky. 690; *State* v. *Laundy,* 103 Ore. 443; *Jones* v. *State,* 4 Ga. App. 741; *Tsuie Shee* v. *Backus,* 243 Fed. 551; *Anderson* v. *U. S.,* 273 Fed. 20.

Whether the arrest of defendant was illegal has no bearing upon his guilt or innocence, and would not prevent evidence against him on a trial of an indictment subsequently found. *State* v. *Snodgrass,* 91 W. Va. 553.

The judgment entered Nov. 21, 1925, is affirmed.

*Affirmed.*