# CHARLESTON.

STATE *v.* GROVER LITTLETON.

(No. 6533)

Submitted January 21, 1930.   Decided January 28, 1930.

*D. B. Evans* and *Everett F. Moore,* for plaintiff in error.
*Howard B. Lee, Attorney General,* and *W. Elliott Nefflen,*
Assistant Attorney General, for the State.

WOODS, JUDGE:

Defendant was charged and convicted of breaking and entering, on the 12th day of September, 1928, a certain barn and building belonging to Frank L. Reid, not a dwelling house or outhouse adjoining thereto or occupied therewith, in Marshall county, and stealing a riding saddle of the value of $25.00, and one pair of check lines of the value of $5.00. There was a general verdict of guilty, under which he was sentenced to the penitentiary. While the burglary may be committed without actual larceny, it could not have been found here properly by the jury without finding both. This fact becomes important in considering certain evidence, the admissibility of which was challenged by the defendant.

The fact that a part of the property stolen was found a few days thereafter in the home of the defendant was admitted in evidence. This part of the testimony was obtained by virtue

of the search of the defendant's home by the officers. True, the officers making the search testified that they not only had a search warrant but a warrant for the defendant, as well. The search warrant was not introduced on the trial, nor was its absence accounted for. An excerpt from the testimony of the officer very fairly presents the question of its admissibility: "Q. When you arrived at the home of Grover Littleton, whom did you find there? A. Found Mr. Littleton there—Grover Littleton. Q. What did you say to him? A. I went into his house and told him we had a warrant and was going through his place, to look his place over for some stolen harness. Q. What was his reply? A. Go ahead. Q. Say anything further? A. No, sir. Said he didn't have any." The defendant's version is as follows: "Q. Tell the jury whether or not the officer said he had a search warrant when he came to search your premises. A. Well, one came to the back door and one to the front door, and I went to the back door when he come in and said 'good evening,' and my wife said 'good evening.' And I opened the door for him, and he come in and went currying all around, and I said, 'What do you want?' He said 'I've got a search warrant here for you.' And I said, 'What for?' and he said, 'Some stolen stuff.' And I said, 'What stolen stuff? We ain't got no stolen stuff here'." The fact is stressed by the state that the officer in his statement to the defendant did not qualify the kind of warrant. The evidence does not show that he made any arrest of the defendant by virtue of the general warrant for his arrest prior to the search. Under the evidence we are of opinion that the defendant was warranted in believing that the officer meant that he had a search warrant. To determine the exact question here in issue, we must advert to general principles respecting the introduction of evidence obtained under search and seizure warrants. While, generally, the admissibility of evidence is not affected by the illegality of the means by which the evidence is obtained, in the case of *State* v. *Wills*, 91 W. Va. 659, this general rule is held to be qualified by section 5 of Article 3 of the Constitution, which provides that no person in any criminal case shall be compelled to be a witness against himself, and by section 6 of the same

article, which inhibits unreasonable searches and seizures. So, where evidence obtained by the latter means is sought to be used against the defendant in a criminal case, the state must not only show that a search warrant was issued under which the officer acted, but produce it in evidence as a basis for the admission of such testimony, or satisfactorily account for its non-production. *State* v. *Joseph,* 100 W. Va. 213; *State* v. *Slat,* 98 W. Va. 448. And, where the loss of the warrant is satisfactorily shown, the further burden is cast upon the state, in order that the articles seized and the testimony of the officers making such search may be admitted in evidence, to show that such warrant was in proper form to authorize the search of the defendant's premises. *State* v. *Neal,* 96 W. Va. 456. We are committed to the doctrine announced in the foregoing cases. Well ordered procedure in criminal trials, if nothing else, inveighs against the taking of any step now that would unstabilize it. Upon the introduction of the evidence obtained here by the search of the defendant's home, and an objection thereto by the defendant, the state neither offered the search warrant under which the officers acted in evidence nor in any wise accounted for the failure to do so. This action on the part of the prosecution was based on the ground that *such search was made by virtue of special authority given the officer by the defendant.*

The defendant may waive his constitutional rights at the time the search and seizure is made. Cornelius' Search and Seizure, sec. 17, p. 73, and cases there cited. In such case the fact of whether there was a search warrant becomes immaterial. Did the defendant here by his statement ''Go ahead'' in response to the officer's declaration that he had a search warrant, waive his constitutional rights and consent to the search? The attorney general in his able brief admits that the exact question has never been decided by this Court. Nor is any case cited by him upon the precise question from other jurisdictions. On the contrary, it has been held that there is no voluntary permission to search when the defendant was told by officers that they had a search warrant to search his place for liquor, whereupon the defendant said ''all right, white folks, search my house whenever you get ready.''

*Morton* v. *State,* 136 Miss. 284, 101 So. 379. We are constrained to the opinion that the defendant under the circumstances here did not voluntarily consent to the search of his house. His response, "Go ahead", was induced by the belief that the officers had a search warrant and that they had a lawful right therefore to search his dwelling. Before a court can hold that a person has waived any of his constitutional rights, it must be able to find a waiver by clear and positive testimony. Conversely, had the defendant Littleton replied, "Go ahead", to a statement from the officer that he had no warrant, such waiver would have been clear. The response made by the defendant here to the officer, under the circumstances, cannot be construed as such waiver of his rights, but rather as a statement that it was not his intention or purpose to offer any resistance to the officers' performing their duty under what he had a right to believe from their statement to him that they were acting under a search warrant issued by competent authority on a proper showing of probable cause. *Atwood* v. *State,* (Okla.) 280 Pac. 319.

The principle involved here is not unimportant. The maxim that "every man's house is his castle" is made a part of our constitutional law in clauses prohibiting unreasonable searches and seizures, and has always been looked upon as of high value to the citizen. The eloquent passage in Chatham's speech on General Warrants is familiar: "The poorest man may, in his cottage, bid defiance to all the forces of the Crown. It may be frail; its roof may shake; the winds may blow through it; the storm may enter; but the King of England may not enter; all his force dares not cross the threshold of the ruined tenement." The safe guards thrown around the admission of testimony in evidence to insure the courts that it has been procured in accordance to constitutional requirements, so well established in our decisions, must not be relaxed. But, can we say that the defendant was not prejudiced by the admission of this testimony? The state introduced other facts and circumstances tending to show its guilt. The weight and effect of the circumstances that the accused, soon after the burglary charged, was found in the possession of some of the goods which had been taken from the barn where

the burglary was committed, is left for the jury to determine. We cannot say to what extent its verdict was influenced by it. So, its reception constitutes reversible error.

Another assignment of error goes to the instructions. Instruction No. 2 given at the instance of the state is: "The Court instructs the jury that exclusive possession and control of property recently stolen are circumstances tending to show that the person found in the possession of such goods is the thief, and the jury may consider them in connection with all the other facts and circumstances proven in the case, and if from all the facts and circumstances in this case, you are convinced beyond a reasonable doubt that the defendant did break and enter the building of Frank Reid with intent to commit larceny of any property, as alleged in the indictment in this case, it is your duty to find the defendant guilty."

No good purpose would be accomplished by a review of the holding of the courts of other jurisdictions on the question of the effect of possession of recently stolen goods. The law is well stated in *State* v. *Littleton,* 77 W. Va. 804, a case where the indictment (as here) charges the breaking and entering a building with intent to steal: "The possession of stolen goods is not of itself even prima facia evidence that the person in whose possession the stolen goods are found, is the thief, or that he is guilty of breaking and entering the house from which the goods were stolen; but the exclusive possession and control of property recently stolen, are circumstances tending to show that the person found in possession is the thief, and the jury may consider them in connection with all other circumstances and facts in proof." This law has been applied in varied forms of statement in many cases in this state both before and since then. *State* v. *Heaton,* 23 W. Va. 773; *State* v. *Reece,* 27 W. Va. 375; *State* v. *Ringer,* 84 W. Va. 546; *State* v. *Powers,* 91 W. Va. 737; *State* v. *Mullett,* 94 W. Va. 680.

The instruction under review states the foregoing principle of law, with the possible exception that it does not in so many words state that proof of such possession is not of itself prima facie evidence that the person in whose possession the stolen goods are found is the thief. Neither does it state that a

conviction may be had thereon alone. We have never held that an instruction in substance as the one given here constitutes error. Clarity of expression, however, would require the insertion of the omitted element. We perceive no just criticism of the other instructions given to the jury by the court.

Since the case must be returned for a new trial, decision of the question of the sufficiency of proof of venue raised on this record, becomes unnecessary.

*Judgment reversed; verdict set aside; new trial awarded.*