STATE OF WEST VIRGINIA *v.* C. L. DAWSON

(No. 8254)

Submitted February 4, 1936.  Decided February 25, 1936.

126

Hatcher, President, dissenting.

*T. C. Townsend, E. S. Bock, Ben Moore* and *Dale G. Casto,* for plaintiff in error.

*Homer A. Holt,* Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for the State.

Kenna, Judge:

C. L. Dawson was convicted in the Intermediate Court of Kanawha County of a violation of Code, 61-10-1, the charging part of the first count of the indictment being that he did "unlawfully keep and exhibit gaming tables commonly called A. B. C. and E. O. tables or faro bank or keno tables and other gaming tables and devices of like kind, against the peace and dignity of the State." The second count of the indictment charges that Dawson was "concerned in interest" in keeping and exhibiting gaming tables, describing them in the same language by which they are described in the first count.

Dawson appeared, pleaded not guilty, and demanded a bill of particulars. This demand was refused. A demurrer to, and a motion to quash, the indictment were entered and overruled. The State proceeded to proof. Dawson moved to strike out the testimony of each witness for the state, and at the conclusion of the state's case moved to strike out all of the state's proof. He tendered no proof on his own behalf, and, after verdict against him, moved to set aside the verdict and in arrest of judgment. His contentions, as presented by the record, are the following:

First. That the indictment is bad because of the fact that the section under which he stood indicted describes offenses that are committed by the keeping and exhibiting of gaming tables of different kinds, named in the disjunctive, and the fact that the indictment names the different kinds of gaming tables that Dawson is accused of keeping and exhibiting also in the disjunctive, so that, from a reading of the indictment, the accused could not tell which of the different kinds of gaming tables named in the statute he was accused of keeping and exhibiting, and, furthermore, that under the indictment here, an order showing conviction and sentence could not be pleaded in bar of a subsequent prosecution for exhibiting any one of the gaming devices named in the indictment.

Second. That the proof offered by the state at the trial does not show that the defendant kept and exhibited one of the kinds of gaming tables specifically named in the statute, nor does it show that he kept and exhibited "other gaming tables and devices of like kind" within the meaning of the statute, that is to say, gaming devices, the playing of which brings into operation unequal chances with the chances favoring the operator or exhibitor.

Third. That the order of conviction directs the destruction of all of the property of Dawson seized under the search warrant, which includes money not shown to have been "staked or exhibited to allure persons to bet at such tables," and other property not authorized by the statute to be seized.

It is a time-honored and rudimentary rule of criminal pleading that where a statute describes several offenses, or several different modes of committing an offense, separating them by the disjunctive "or," the pleader, if he desires to include them all in the indictment, should do so by connecting them with the conjunctive "and." This rule has been repeatedly recognized in this jurisdiction and in the state of Virginia, the only exception to it that is established in either jurisdiction being the case of indictments for the sale of intoxicating liquor. No sound reason has ever been advanced in support of this excep-

tion. In the case of *Morgan* v. *Commonwealth,* 48 Va. (7 Gratt.) 592, decided in 1850, the Virginia court affirmed a conviction under an indictment charging that the accused "did sell by retail, to be drunk in his house, rum, wine, brandy, or other spirituous liquors." The court wrote no opinion, simply declaring that the judgment was affirmed. The same rule was applied in *Cunningham* v. *State,* 5 W. Va. 508, Judge Berkshire, who wrote the opinion of the court, declaring, however, that if the question were open, he would be disposed to think that there was much force in it, but that the court was bound by the decision of the Virginia Court in Morgan's case. The next West Virginia case to discuss the rule and the exception from its effect of cases involving the sale of intoxicating liquor was *State* v. *Charlton,* 11 W. Va. 332, 27 Am. Rep. 603, in which Judge Green, speaking for the court, in the opinion discussed Morgan's case and refused to extend the exception to the general rule to a case not involving the description of different kinds of intoxicating liquor. Charlton's case, as a matter of fact, was a prosecution for the unlawful sale of intoxicating liquor, but use of the disjunctive in the indictment arose in connection with the charge that the defendant had sold intoxicating liquor without a license to be drunk "in, upon or about the building or premises as sold." The indictment was held bad. The question arose again in *State* v. *Miller,* 68 W. Va. 38, 69 S. E. 365, under an indictment charging disjunctively that the accused had practiced dentistry without a license by doing one or more of several acts described disjunctively in the statute as constituting the practice of dentistry. The charge, following the language of the statute, was laid disjunctively. The indictment in that case was held bad, the court discussing the decision of Morgan's case and stating: "The principle of the exception has been questioned, if not disapproved, by this court, and the inclination is not to extend it."

But the state argues that since the terms used to describe the gaming devices in Code, 61-10-1, are synonymous in the sense that they are all games wherein the

chances are unequal with the chances favoring the operator of the game, the words "to-wit" may be substituted for the word "or," thus demonstrating that the case does not fall within the general rule. The state cites the case of *State* v. *Newsom*, 13 W. Va. 859, in which an indictment for malicious wounding was sustained where the instrument of the crime was described as "a certain pistol or revolver." The *Newsom* case was reversed on other grounds, and the opinion does not discuss the rule of disjunctive allegations, citing no authority other than Bishop's Crim. Pro., Paragraph 229. This is a miscitation in so far as the editions of Bishop's Criminal Procedure available to us are concerned. The state also cites 31 C. J. 664; note 51 L. R. A. (N. S.) 133; *Henderson* v. *State*, 113 Ga. 1148, 39 S. E. 446; *People* v. *Farrell*, 349 Ill. 129, 181 N. E. 703, and *People* v. *Lavendowski*, 329 Ill .129, 160 N. E. 582. These authorities sustain the proposition that, in an indictment, terms which are synonymous in the sense of being merely a repetitious explanation of what precedes may be separated by the word "or" used in the sense of "to-wit." But we do not believe that the indictment here in question, naming, as it does, several and different acts, any one of which constitutes the generic offense defined in the statute, falls within that category. A reference to any fairly good encyclopedia, we believe, will demonstrate, even to the uninitiated in such matters, the confusion that would manifestly result in charging a person with exhibiting a "faro bank, to-wit, a keno table." The two games named, as disclosed by the descriptions of them in the encyclopedia, are different, involve different chances, and are played under different rules. To prove the exhibiting of one, would have no relation to the other. The names describing them cannot be treated as synonymous. This statute has been applied to a "slot machine." *State* v. *Gaughan*, 55 W. Va. 692, 48 S. E. 210. Could one call that term a synonym of "faro bank?" The synonymity urged by the state is that all of the games described in the statute are of the same generic nature in that they all must involve uneven chances with the chances in favor of the exhibitor. The

accused points out that this indictment does not contain the charge that he was operating a game of uneven chances with the chances in favor of the operator of the game. However this may be, we are impressed with the fact that the contention of the state, if sustained, would likely destroy the effect of the general rule invoked because of the fact that, under our constitution requiring that only one object be dealt with in an act of the Legislature (Constitution, Article VI, section 30), there must be a certain generic similarity in all the subjects dealt with under a single statute. Therefore, if the generic similarity must exist in all of the subject matter of a specific statute, it would follow, on the state's contention to the effect that the disjunctive charge is justified where such generic similarity does exist, that such method of charging the offense could be used under all valid statutes. It may be said that this carries the idea of generic synonymity to the point of absurdity, but if we once lay hold of it, where are we going to let it loose? It would become merely a question of degree. In our case of *State* v. *Miller*, 68 W. Va. 38, 69 S. E. 365, the court undoubtedly had before it an indictment which charged the accused with the unlawful doing of acts that bore this same generic relationship to each other. They were the "performance of operations or parts of operations, treating of diseases or lesions of the human teeth or jaw." The statute made any of the acts the practice of dentistry. Yet, the court, in that case, because the charges were laid in the disjunctive, held the indictment bad, stating: "The well settled general rule is that this makes an indictment bad for uncertainty."

The state urges that because Code, 61-10-14, requires that statutes for the suppression of gaming shall be construed as remedial, the court should indulge a liberal construction of this indictment and hold it valid. There is a decided difference between the liberal application of a statute and a liberal construction of an indictment drawn under it. Persons accused of crime have the same basic rights under the constitution. We cannot say that one class of such persons is entitled to less accurate informa-

tion concerning the accusation against him than is another. The application of this statute to the variant circumstances of gaming as they arise must be liberal in order to suppress the evils at which it is aimed, but that rule has nothing to do with the drawing of indictments. The argument on the insufficiency of the indictment before us is based upon constitutional grounds. Section 14 of Article III of the Constitution of West Virginia, provides that in the trial of crimes and misdemeanors, "the accused shall be fully and plainly informed of the character and cause of the accusation * * * ." It is upon this provision of the constitution that the sufficiency of the indictment on the question of adequately informing the accused is to be tested. No provision made by the legislature can control the courts in applying this test.

This is, perhaps, an unfortunate case in which to apply the principles upon which it must be reversed. There is no showing here that an actual injustice resulted by reason of the insufficiency of this indictment. The accused, as a practical matter of fact, likely knew what he was to be tried for. When the officers raided, he was present at the place where a variety of gaming devices were exhibited. The facts, as shown at the trial, tend strongly to show that he could not have been misled to his prejudice by the fault in the indictment. But such questions cannot be resolved by the accidental and casual circumstances that surround each case as it arises. If the facts shown at the trial to have been known to the accused, in connection with his arrest, are to be taken as forming the background from which he must draw his information concerning the accusation upon which he is to be tried, then there would be little use of requiring an indictment, presentment or warrant for the purpose of informing the accused. We would then have to determine the question from the evidence and not from the sufficiency of the formal charge. The rule, of course, is that the state must inform the accused fully by means of the indictment, presentment, or warrant. The information that the accused may draw from adventitious cir-

cumstances does not count, and where the rule upon which this case is reversed may be, today and now, applied to a case where the language of this indictment, from a reading of the whole record, has resulted in no hardship, it may be necessary tomorrow to apply it in a matter where a serious and vital miscarriage of justice would result in its absence. It is an easy and simple rule to follow, and has, for a very long time indeed, been regarded as salutary in practically all of the courts that have considered it, including our own, with the single exception already discussed.

But even if we were to hold this indictment good, a very grave question would be presented upon the refusal of the trial court to require the state to furnish the accused with a bill of particulars. The demand was seasonably made, and in the light of the broad scope of the indictment and the variety of matters that might be introduced in evidence under its allegations, when correctly drawn, we are of the opinion that the trial court was not within the limits of a sound discretion in refusing to require the state to furnish such further information as would have been required by a reasonable compliance with the demand.

In the light of the disposition made of the case upon the conviction of the accused, the questions raised with reference to that part of the order of judgment which deals with the destruction of the property seized under the search warrant need not be discussed at length. The destruction of the seized property could have been ordered by the court only upon the theory that it was justified by the conviction of the accused. When that conviction is set aside, necessarily, the order of judgment fails with respect to the destruction of the property also.

For the reasons stated, we are of the opinion that the judgments of the Circuit and Intermediate Courts of Kanawha County must be reversed, the verdict of the jury set aside, and the case dismissed.

*Judgments reversed; verdict set aside; case dismissed.*

MAXWELL, JUDGE, concurring:

I concur in the result, but would not do so if the matter stood solely on the question of sufficiency of the indictment. While it is true that as a general rule an indictment should not make averments in the disjunctive, I am constrained to the belief that the rigor of that rule should not be extended to an indictment for operating gaming devices inhibited by the statute. All devices therein enumerated are equally banned, and, as well, "any other gaming table or device of like kind, under any denomination, or which has no name." Code 61-10-1. The language of the statute is broad and far reaching. The gravamen is the keeping or exhibiting of any of said devices, whether the one or the other of those named, or one like unto any of the enumerated ones.

But, on the assumption that the indictment is sufficient, I think there was prejudicial error in the trial court's refusal to require the state, on the timely motion of the defendant, to furnish a bill of particulars. *State v. Lewis,* 69 W. Va. 472, 72 S. E. 475, Ann. Cas. 1913A, 1203. The *Lewis* case involved an indictment for larceny, but the necessity for a bill of particulars is the same, I think, in a case such as at bar as in a larceny case. In my opinion, the reasoning is equally applicable in both kinds of cases.

HATCHER, PRESIDENT, dissenting:

I concur in Judge Maxwell's construction of the indictment; but I cannot concur in his views, or those of the majority of the court on the bill of particulars. A criminal trial should be a trial of realities, not technicalities. The realities here are all against the accused. The evidence submitted by the state was ample to convict. The accused offered no evidence. The record (our only guide) does not disclose any defense on the merits. Admitting for the sake of argument, that the bill of particulars should have been furnished, it is manifest that the refusal to do so was clearly harmless. This court said in *State v. Counts,* 90 W. Va. 338, 110 S. E. 812, that a case

would not be reversed because a bill of particulars was denied *"unless it is clear that defendant has been prejudiced thereby."*

Legal technicalities are designed to safeguard the innocent, and not to shield the guilty. Hence, the rule of "harmless error." This court approved that rule in *State v. Rush,* 108 W. Va. 254, 260, 150 S. E. 740, wherein was said: "The accused was, of course, entitled to a fair trial. But the term 'fair trial' does not imply a perfect trial. A trial without prejudice to the accused is a fair one. And because a perfect trial is rarely, if ever possible, necessity and common sense have evoked the rule of 'harmless error,' as to error which does not prejudice. That rule is: a verdict will not be reversed merely because of error committed by the trial court, but only when the error has been harmful to the appellant."

Being unable to see why that rule should not apply in this instance, I respectfully dissent.