STATE OF WEST VIRGINIA *v.* C. L. DAWSON

(No. 8323)

Submitted May 5, 1936.   Decided May 26, 1936.

502

T. C. *Townsend,* E. S. *Bock,* Ben *Moore,* Dale G. *Casto,* and E. S. *Bock,* Jr., for plaintiff in error.

Homer A. *Holt,* Attorney General, and Kenneth E. *Hines,* Assistant Attorney General, for the State.

WOODS, JUDGE:

Defendant was convicted under an indictment charging him with (1) keeping and exhibiting, and (2) being concerned in interest in keeping and exhibiting, a gaming table in violation of Code 1931, 61-10-1, and adjudged to pay a fine and serve time in the county jail. This writ of error followed.

It appears that sometime after 8:15 on Saturday night, May 18, 1935, defendant's place of business was raided by state police; and in a back room a number of games, to-wit, poker, craps, etc., were found in progress. The operators or dealers at the various tables were employed by, and received a salary from, the defendant. Gillespie operated the "craps" table. He was engaged in "paying off and collecting bets." All of the gambling paraphernalia taken into custody, including the felt top to the "craps" table, and the dice used in connection therewith, etc., were introduced in evidence and exhibited to the jury.

It is contended that the evidence of the state (defendant having introduced no evidence) is not sufficient to sustain a conviction under the indictment. Thus the primary question before us on the present writ of error is whether the state's evidence was sufficient to establish that the "craps" table was a table or game of unequal chances, all other things being equal, and that such un-

equal chances were in favor of the keeper, or exhibitor of the game, as required, in such cases, to sustain a conviction. *State* v. *Gaughan*, 55 W. Va. 692, 48 S. E. 210; *Nuckolls* v. *Com.*, 32 Gratt. (73 Va.) 844; *Huff* v. *Com.*, 14 Gratt. (55 Va.) 648; *Com.* v. *Wyatt*, 6 Rand. (27 Va.) 694, 695; *Lewis* v. *Com.*, 115 Va. 962, 80 S. E. 575. Defendant's two instructions placed this issue squarely before the jury.

On the cover of the "craps" table appears certain lines, words and figures—a portion being designated as "line," another "field," and statements, such as "11 pays 15 for 1", "Craps 2-3-12 pays 7 for 1", etc.

The testimony of trooper Shields, while not very comprehensive in regard to the use of the table, does show that the player purchased chips, laid bets upon desired positions on the table, and then rolled the dice, and that the house covered all, except side bets. According to this witness' testimony, the player's success or failure was dependent upon the throwing of the dice. He states that he purchased $2.00 worth of chips at two different times, and lost all. He explained that the player wins if the sum of the dice is 7 on the first throw; that if, instead of a seven, the number is a point, he continues until he throws the same number again, in which case he wins, or a seven, in which case he loses. The dice used were exhibited to the jury, who, in the light of the other evidence, had the right to consider the possible combinations, and the probability (or chance) of any special number from two to twelve being realized. Thus the chances are thirty to six against throwing a seven the first time; and if the player's point is made, the probability of a seven appearing is greater than the repetition of the point. In other words, the odds are against the player and in favor of the house, and this does not change, since it appears that only the player throws the dice. While, from the table cover, it appears that the house will pay 15 for 1 on a bet that the player will make an 11, this does not make the chances any the more equal, since the probability of throwing an "11" is

at the ratio of 2 to 34. In view of the foregoing, we are of opinion that the evidence is sufficient to support a verdict against the defendant. The jury, under the instructions given at the instance of the defendant, necessarily came to the conclusion that the chances were unequal, all other things being equal, and that such unequal chances were in favor of the keeper or exhibitor of the game.

It is urged that the accused did not have an impartial jury, in that the prosecuting attorney, nine days prior to trial, in open court in presence of the venire, had read a letter from the Governor in which the latter assumed responsibility for pardons erroneously granted to a number of persons who had been sentenced to serve time in the county jail, etc., and that the same tended to poison the minds of the jury against defendant. No reference appears in the letter to gambling and there is no suggestion in the record that the prosecuting attorney made any prejudicial remarks in connection therewith. While it appears on the voir dire that all but one, if not all, of the venire were present, no one heard anything that was read. So, nothing appears of record tending to show that the panel of twenty were in any way disqualified to act.

The remaining question has to do with a remark of the court, at time of defendant's motion to strike state's evidence and direct a verdict of not guilty, that "the motion will be overruled, the state's witness, Mr. Shields, having testified that on two different occasions he lost all money played in the defendant's place of business." It is argued that the foregoing remark, although directed to counsel, had the effect of an instruction, thus vitiating the effect of the two instructions, offered on behalf of defendant, and which the court had indicated that he would, and which he subsequently did, give. The precise question was not raised in court below on motion to set aside the verdict and award a new trial. And an examination of the record reveals that the remark was not made before the jury, but in chambers, the motion to

strike having been made immediately after court had indicated he would give defendant's two instructions. In view of the record, defendant cannot say that he was prejudiced thereby.

Perceiving no prejudicial error in the trial of the case, the judgment must be affirmed.

*Affirmed.*