STATE OF WEST VIRGINIA

*v.*

LEO J. CALANDROS
(No. 10654)

Submitted January 12, 1955. Decided March 22, 1955.

LOVINS, PRESIDENT, dissenting.

*Robert B. Goodwin,* for plaintiff in error.

*John G. Fox,* Attorney General, *Robert E. Magnuson,* Assistant Attorney General, for defendant in error.

GIVEN, JUDGE:

Leo J. Calandros, hereinafter designated as defendant, was indicted, tried and found guilty in the Circuit Court of Jackson County, of keeping and exhibiting a gaming table and having an interest in keeping or exhibiting a gaming table, commonly called a slot machine, and sentenced to three months in the jail of Jackson County and to pay a fine of $200.00 and costs. On the petition of the defendant, this writ of error was granted.

The indictment, consisting of four counts, substantially charges that, on the 23rd day of November, 1951, the defendant did knowingly and unlawfully, in a certain room

in the building known as the "Believe It or Not Restaurant" in the V.F.W. Clubroom, in the town of Ripley, Jackson County, West Virginia, (1) keep and exhibit a gaming table, commonly called a slot machine, which slot machine is like and similar to the kind commonly called A.B.C. and E.O. table and faro bank and keno table; (2) have an interest in keeping and exhibiting such gaming table; (3) keep and exhibit and was concerned in and interested in keeping and exhibiting a gaming table, (4) keep, exhibit and have an interest in keeping and exhibiting such gaming table, upon which table, games of chance were played, the chances thereof being unequal in favor of the keepers and exhibitors thereof.

The record discloses that the building in which the machine was found was owned by Lucy Harlowe and leased by her to Gene Panoz. A brother of Panoz operated a restaurant in the front portion of the leased building and had a license to operate a V.F.W. Clubroom in the rear portion of the building. The club was operated by the brother and wife of the lessee. The defendant did not own, occupy, possess or have any interest in the premises where the gaming device was found.

On November 23, 1951, the chief of police of Ripley, West Virginia, accompanied by a member of the Department of Public Safety, a deputy sheriff and a city policeman, entered the clubroom, and searched the room under authority of a search and seizure warrant bearing date November 23, 1951. During this search of the premises the gaming device was discovered. The gaming device was removed from the clubroom and taken to the sheriff's office in the courthouse. Lessee pleaded guilty to a charge of operating a slot machine and paid a fine and costs.

The defendant admitted that he owned the gaming device and that he had placed it in the clubroom with consent of the operator of such club, and with the understanding that defendant would receive twenty per cent of the gross receipts. Defendant testified, however, that the gaming device was never intended to be used in gambling;

that he had placed a sign on the front of the device which read, "For Amusement Only", when the gaming device was installed in the clubroom; and to his knowledge the device was a "free game" device.

The gaming table was electrically operated. It could be played for either five or twenty-five cents. After a coin had been inserted, a lever or handle on the center front was "tripped", which caused three discs or reels in the cabinet to spin. Each reel had a number of pictures or figures representing oranges, lemons, plums, cherries, bells, and bars upon them. In order to win, it was necessary that a certain combination of those pictures be in line on the three reels when the reels stopped turning. The device did not pay money, but a winner was paid in some instances by an employee of the club.

The day after the seizure of the device, the defendant, upon request, produced a key and unlocked it. It contained $8.45 in nickels and $14.25 in quarters, a total of $22.70.

The record indicates that the warrant authorizing the officers to search and seize was originally issued on the 18th day of August, 1951, redated as of the 18th of September, 1951, and subsequently redated as of the 23rd day of November, 1951.

One of the members of the club testified that she had played the device in question; that she had played both the five cent and the twenty-five cent sides of the device, and had won on the twenty-five cent side eight quarters, and was paid by an employee of the club. The employee of the club testified that she paid money to persons who won on this device; that she took the money for such purpose from the cash register behind the bar; that she overheard a conversation between defendant and the club operator, her employer, to the effect that the device would be installed in the clubroom, and that "they would fix it for amusement only so that there wouldn't be no harm if anything was done".

The mayor of the town of Ripley and a member of the Department of Public Safety testified that prior to the discovery and seizure of the machine, sometime during the year, 1951, defendant approached them as they were standing on a street in the town of Ripley conversing, and made statements to the effect that he would like to place or install slot machines in the various business establishments in the town of Ripley. The exact date of this conversation and statements is not shown. The defendant admitted that he had mentioned something about installing slot machines to the mayor and a member of the Department of Public Safety, but that he was jesting at the time.

The defendant makes ten assignments of error, but such assignments fall into three categories: (a) the rejection of proper evidence and the admission of improper evidence; (b) the argument of the prosecuting attorney; (c) insufficiency of the evidence to support the verdict.

Four of the assignments relative to the admission or rejection of evidence are based on the alleged illegality of the search warrant used by the officers under which the search of the premises was made, and where the gambling device was located.

There is a conflict of authority with reference to the admission of testimony obtained by an unreasonable search and seizure. In *State* v. *Edwards,* 51 W. Va. 220, 41 S. E. 429, and *State* v. *Sutter,* 71 W. Va. 371, 76 S. E. 811, this Court held that the admissibility of evidence was not affected by the illegal manner by which it was obtained. Subsequent to the decision of this Court in *State* v. *Edwards, supra,* and *State* v. *Sutter, supra,* in the case of *Weeks* v. *United States,* 232 U. S. 383, 58 L. ed. 652, 34 S. Ct. 341, it was held that the fourth amendment to the Constitution of the United States prevented the use of evidence secured through an illegal search and seizure. Following the *Weeks* case, this Court changed its view and held in the cases of *State* v. *Wills,* 91 W. Va. 659, 114 S. E. 261, and *State* v. *Andrews,* 91 W. Va. 720, 114 S. E.

257, that the use of evidence obtained through an illegal search and seizure warrant violated the Constitution. In the *Wills* and *Andrews* cases, the testimony and information so illegally obtained, were excluded. In the later cases of *State* v. *Pridemore,* 93 W. Va. 417, 116 S. E. 756; *State* v. *Massie,* 95 W. Va. 233, 120 S. E. 514; and *State* v. *Littleton,* 108 W. Va. 494, 151 S. E. 713, the rule announced in the Wills case was reiterated and approved. But the instant case presents another question. Here the search warrant is objected to by the defendant on the grounds that it was issued originally on the 18th day of August, 1951, redated as of the 18th day of September, 1951 and later redated as of the 23rd day of November, 1951, the day of the search. The record made in the instant case indicates that the search warrant was so dated and redated.

Under the opinion of this Court in the case of *State* v. *Pachesa,* 102 W. Va. 607, 135 S. E. 908, it was held that a search and seizure warrant must be executed within a reasonable time from the date of its issuance and a search and seizure made under such warrant were held to be unreasonable. The search and seizure warrant in this instance might be governed by the principle stated in the *Pachesa* case, and the search and seizure rendered unreasonable, by reason of the fact that the warrant originally was dated August 18, 1951 and executed on November 23, 1951. But we are not called upon to decide that question, since the defendant here had no possession, ownership or control over the premises searched.

Though not a point of decision, the language of this Court in the case of *State* v. *Henderson,* 103 W. Va. 361, 137 S. E. 749, is significant, wherein it was said: "* * * When the warrant was offered defendant objected and the court did not let it go to the jury. It is not a part of the record and we do not know its form or contents. It appears to have been for a search of the premises of the father, and the court evidently took the view that it was immaterial on the trial of the defendant. We do not pass upon the point, because it is not properly raised by this record, as hereinbefore pointed out, but there is respectable

authority for the proposition that the constitutional provisions against unreasonable searches and seizures are personal; and the accused cannot object to evidence obtained against him by an illegal search and seizure of the property of another person. *Comm.* v. *Flynn,* 196 Ky. 690; *State* v. *Laundy,* 103 Ore. 443; *Jones* v. *State,* 4 Ga. App. 741; *Tsuie Shee* v. *Backus,* 243 Fed. 551; *Anderson* v. *U. S.,* 273 Fed. 20."

There is ample authority in other jurisdictions to sustain the soundness of the above mentioned principle. See *Wolf* v. *Colorado,* 338 U. S. 25, 93 L.ed. 1782, 69 S.Ct. 1359; *United States* v. *Walker,* (2nd C.C.A.) 190 F. 2d 481; *United States* v. *Printing Machinery,* (3rd C.C.A.) 122 F. 2d 764; *Schnitzer* v. *United States,* (8th C.C.A.) 77 F. 2d 233; *McClannan* v. *Chaplain,* 136 Va. 1, 116 S. E. 495; 20 Am. Jur., Evidence, §394; Annotations 150 A.L.R. 577; 134 A.L.R. 831; 88 A.L.R. 365; 52 A.L.R. 487; 41 A.L.R. 1151; 32 A.L.R. 415 and 24 A.L.R. 1425.

The instant case is distinguishable from the case of *United States* v. *Jeffers,* 342 U. S. 48, 96 L. ed. 59, 72 S. Ct. 93, in that in the *Jeffers* case the defendant objecting to the use of a search warrant had a key to the room searched and permission to use it at will. There is no showing here that the defendant had any such means of access to the premises searched or the right to use such premises.

We are of opinion that the defendant had no right to object to the search and seizure, for the reason that his right of privacy was not violated and his constitutional rights were not affected, since the premises searched and the property seized were in the possssion of a third person.

The other assignments of error relative to the admission and rejection of evidence relate to the refusal of the court to permit a witness to testify whether the clubroom was open to the general public or whether it was a private clubroom; the refusal of the court to instruct the jury to disregard the statement of the chief of police of Ripley, relative to law violations by the defendant; the action of the court in allowing certain police officers to testify as to

the operation of gambling devices; in admitting the evidence relative to conversation between the defendant, the former mayor of Ripley, and a member of the Department of Public Safety.

We have examined these assignments of error and the record relating to them. We find no prejudicial error in any of the particulars complained of by the defendant herein as to the other assignments of error relating to the admission and rejection of evidence.

In his opening and closing arguments, the prosecuting attorney misquoted the evidence of the witness with reference to what was said by the defendant when the machine was placed in the clubroom. Rule VI, Rules of Practice for Trial Courts, 116 W. Va., page LXII, so far as pertinent, reads as follows: "* * * Counsel may not * * * misquote the evidence * * *".

The court, in ruling on defendant's objection to the remarks of the prosecuting attorney, said: "Gentlemen of the jury, you are the judges of the evidence and you will decide what was said. You are the tryers of the facts." Certainly, prosecuting attorneys, as well as other counsel, should follow the rules of practice prescribed for them in making arguments to the juries. *State* v. *Shores,* 31 W. Va. 491, 7 S. E. 413.

After a careful examination of the language of the prosecuting attorney appearing in the record, and the court's action thereon, we see no reversible error. We disapprove of the action of the prosecuting attorney in this instance, but we do not reverse the judgment of the trial court for that reason, since no prejudicial error resulted.

We now come to the controlling question in this case. Is the evidence sufficient to sustain the verdict? The defendant is prosecuted for violating the following statute: "Any person who shall keep or exhibit a gaming table, commonly called A.B.C. or E.O. table, or faro bank, or keno table, or any other gaming table or device of like kind, under any denomination, or which has no name,

whether the game, table, bank or device be played with cards, dice or otherwise, or shall be a partner, or concerned in interest, in keeping or exhibiting such table, bank or gaming device of any character, shall be guilty of a misdemeanor * * *". Code, 61-10-1. For a discussion and application of the statute, see State v. Dawson, 117 W. Va. 125, 184 S. E. 253; Cambria v. Bachmann, 93 W. Va. 463, 118 S. E. 336.

The record discloses that the defendant had no control as an owner, lessor or otherwise, of the premises occupied by the club; that he had no control over the operation of the device; that the gambling device would not pay money directly to a winner; that the employee who paid money to certain persons playing the machine was not an agent of defendant, but of the operator of the clubroom; and that the defendant cautioned the operator of the clubroom that the device was to be used for amusement only. The State argues that such caution by the defendant, and the placing of a notice on the device saying "For Amusement Only", constituted merely an effort or scheme to conceal the intended illegal use of the device. The only witness testifying in respect to any such evil intention of defendant, testified only to the effect that "I suppose it" was for the purpose of misleading, the people, the State or officers. A supposition of a witness is not sufficient to convict. We must, therefore, necessarily conclude that there is not sufficient evidence in the record to show that defendant authorized or knew that the device was to be used, or was being used, for gambling purposes. Though defendant's connection with this device may give rise to suspicion, even strong suspicion, that is not sufficient to support the verdict. State v. Beall, 98 W. Va. 189, 126 S. E. 569; State v. Chafin, 78 W. Va. 140, 88 S. E. 657; State v. White, 66 W. Va. 45, 66 S. E. 20.

In criminal prosecutions in this jurisdiction, it is the duty of the State to show that the defendant is guilty by evidence so convincing as to establish his guilt beyond a reasonable doubt. State v. Campbell, 115 W. Va. 198, 174 S. E. 797; State v. Scurlock, 99 W. Va. 629, 130 S. E. 263;

*State* v. *Dudley,* 96 W. Va. 481, 123 S. E. 241. Since the evidence does not sustain the verdict, it was error for the trial court to overrule a motion to set aside the verdict. In *State* v. *Hudson,* 128 W. Va. 655, 37 S. E. 2d 553, it is held: "A verdict of guilty in a criminal case, which is without sufficient evidence to support it, will be set aside by the appellate court." See *State* v. *Davis,* 139 W. Va. 645, 81 S. E. 2d 95.

The statute under which defendant was indicted, Code, 61-10-1, makes it an offense for any person to keep or exhibit, or be concerned in interest in keeping or exhibiting "a gaming table, commonly called A.B.C. or E.O. table or faro bank, or keno table, or any other gaming table or device of like kind, under any denomination, or which has no name * * *". As before noted, the indictment against defendant contained four counts, each charging the commission of an offense in the language of the statute. The evidence, however, does not establish that the device in question was either an "A.B.C. or E.O. table, or faro bank, or keno table, or any other gaming table or device of like kind * * *". The device in question is referred to in the testimony as being similar to a "slot machine" or a "one armed bandit"; but we cannot assume that such devices are of "like kind" to those named in the statute. The mere fact that the device could possibly be used or adapted to gambling, does not make it of "like kind". The burden was on the State to establish that the table or device involved in this proceeding was one condemned by the statute. This, we think, it did not do.

Accordingly, the judgment of the Circuit Court of Jackson County is reversed, the verdict of the jury set aside and the defendant is awarded a new trial.

> *Reversed, verdict set aside and defendant awarded a new trial.*

LOVINS, PRESIDENT, dissenting:

With utmost deference to the views of my colleagues, I dissent from the conclusion reached by them that the evidence in this case is insufficient to support the verdict.

This record shows clearly that the defendant owned the device and placed it in the Clubroom with the idea of deriving profit from its exhibition and use. True, the device did not pay money directly to the player. Nevertheless, it was a typical slot machine with the chances unequal, in favor of the exhibitor and owner. The defendant was to receive twenty per cent of the gross receipts; thus he comes within that part of Code, 61-10-1, as being a partner in the exhibition of the device and concerned in interest in keeping and exhibiting the same.

The statute under which the defendant was prosecuted has been a part of the Code for a number of years. See Chapter 27, Acts of the Legislature, 1881. The method of operation was such that the chances for the player to win were unequal. The record clearly establishes such unequality. A game of that character cannot be lawfully played at any place. *State* v. *Gaughan,* 55 W. Va. 692, 48 S. E. 210.

The statute existed before the separation of this State from the Commonwealth of Virginia. In the case of *The Commonwealth* v. *Wyatt,* 6 Rand. 694, the Court had under consideration a similar statute. A conviction under the statute was there upheld where the defendant was charged with using an unlawful gaming table for playing a game called "hap-hazard" or "blind-hazard".

In the case of *State* v. *Dawson,* 117 W. Va. 125, 184 S. E. 253, the indictment was held bad because of disjunctive allegations. But the statute is treated therein as a valid enactment.

In a subsequent opinion by this Court, *State* v. *Dawson,* 117 W. Va. 501, 186 S. E. 175, a judgment of conviction was upheld. The Court, in the last cited case, uses the following language: "Thus the primary question before us on the present writ of error is whether the state's evidence was sufficient to establish that the 'craps' table was a table or game of unequal chances, all other things being equal, and that such unequal chances were in favor of the keeper, or exhibitor of the game, as required, in such cases, to sustain a conviction."

A person who keeps or exhibits one of the classes of gaming tables such as defined in Code, 61-10-1, is a keeper or exhibitor thereof, has an interest or is concerned in keeping them, within the terms of the statute. *State* v. *Henaghan,* 73 W. Va. 706, 81 S. E. 539.

The above cited cases justify the conclusion that the statute under which this prosecution was had is a valid enactment, and the acts proved against the defendant came clearly within its terms and perview.

The Court, in its opinion, says that the evidence is not sufficient to establish the guilt of the defendant beyond all reasonable doubt. As above noted; the defendant certainly placed the device in the Clubroom, and was concerned in, or had an interest in its exhibition and use, to the extent of twenty per cent of the gross intake. This establishes his guilt beyond all reasonable doubt, and the verdict should not be disturbed by this Court. *State* v. *Taylor,* 130 W. Va. 74, 42 S. E. 2d 549.

The rule for determining whether a verdict is upheld by the evidence is tersely stated in Pt. 1, syllabus, *State* v. *Bowles,* 117 W. Va. 217, 185 S. E. 205. "In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the accused beyond a reasonable doubt, though the evidence adduced by the accused is in conflict therewith. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done." See *State* v. *Lewis,* 133 W. Va. 584, 57 S. E. 2d 513.

A similar principle was stated in the case of *State* v. *Price,* 94 W. Va. 644, 119 S. E. 874, where part of the syllabus reads as follows: "A verdict of guilty in a criminal case based upon conflicting oral evidence will not be disturbed unless the evidence so clearly preponderates in favor of defendant's innocence as to clearly indicate passion, prejudice or other improper motive on the part of the jury; * * *".

In the instant case, there is no contravening evidence which shows that the defendant had an interest in the exhibition and operation of the gaming device found by the officers when they searched the V. F. W. Clubroom at Ripley.

Bearing in mind the well established and time-tried principles above stated, I would affirm the judgment of the Circuit Court of Jackson County.